No. 19 Civ. 6327 (JPC)(KHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN FORD,

Plaintiff,

-against-

THE NEW YORK CITY BOARD OF
EDUCATION (a/k/a the Department of
Education) Carmen Farina in her official capacity
as Chancellor,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE
THIRD AMENDED COMPLAINT**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street - Room 2-176*
*New York, NY 10007*

*Of Counsel: Nicholas Green*
*Tel:  (212) 356-2445*
*Matter No.:  2020-026533*

Joseph Anci,
Nicholas Green,
  Of Counsel

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF FACTS ..................................................................... 2

MOTION TO DISMISS STANDARD ...................................................... 7

ARGUMENT .................................................................................... 7

      POINT I ......................................................................................... 7

              PLAINTIFF'S ADEA CLAIMS ARE BARRED
              BY COLLATERAL ESTOPPEL AND
              OTHERWISE FAIL TO STATE A CLAIM ............................................... 7

              A.   Collateral Estoppel..............................**Error! Bookmark not defined.**

              B.   Plaintiff Fails to State a Claim for Age
                    Discrimination ....................................**Error! Bookmark not defined.**

      POINT II ...................................................................................... 12

              PLAINTIFF FAILS TO STATE A CLAIM FOR
              RETALIATION UNDER THE ADA OR
              REHABILIATION ACT .......................................................... 12

              A.   Protected Activity ......................................................... 13

               B.   Causal Connection ......................................................... 14

      POINT III ..................................................................................... 16

              THIS COURT LACKS SUBJECT MATTER
              JURISDICTION OVER PLAINTIFF'S NLRA
              CLAIMS .......................................................................... 16

      POINT IV ..................................................................................... 16

              PLAINTIFF FAILS TO STATE A CLAIM FOR
               RETALIATION IN VIOLATION OF THE FIRST
               AMENDMENT..................................................................... 16

      POINT V ...................................................................................... 18

PLAINTIFF FAILS TO STATE A CLAIM FOR
VIOLATION OF DUE PROCESS ........................................................... 18

POINT VI ................................................................................................. 18

PLAINTIFF FAILS TO STATE A CLAIM FOR
VIOLATION OF RICO ........................................................................... 18

CONCLUSION ..................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)........................................................................................7

Bell Atl. Corp v. Twombly,
    550 U.S. 544 (2007)........................................................................................7

Bernstein v NY City Dept. of Educ.,
    2020 U.S. Dist LEXIS 209365 (S.D.N.Y. Nov. 9, 2020)........................................9

Blair v. New York City Transit Auth.,
    2016 U.S. Dist. LEXIS 149191 (E.D.N.Y. Oct. 12, 2016)....................................10

Bloomberg v NY City Dept. of Educ.,
    410 F. Supp. 3d 608 (S.D.N.Y. 2019)........................................................16

Bryant v. N.Y. Educ. Dep't,
    692 F.3d 202 (2d Cir. 2012)........................................................................12

Caputo v. Copiague Union Free Sch. Dist.,
    218 F. Supp. 3d 186 (E.D.N.Y. 2016) ..............................................................11

Cohen v. Walcott,
    2017 U.S. Dist. LEXIS 97500 (S.D.N.Y. June 23, 2017)....................................19

Davis v. N.Y. City Dep't/Bd. of Educ.,
    2015 U.S. Dist. LEXIS 131719 (E.D.N.Y. August 19, 2015) ................................9

Dhar v. City of N.Y.,
    655 F App'x 864 (2d Cir 2016)....................................................................13

D'Onofrio v. City of N.Y.,
    2010 U.S. Dist. LEXIS 124160 (E.D.N.Y. Sep. 13, 2010)....................................16

Doyle v United Airlines, Inc.,
    914 F. Supp. 2d 325 (E.D.N.Y. 2012) ..........................................................15

First Capital Asset Mgt. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir 2004)........................................................................19

Graham v. Macy's, Inc.,
    2016 U.S. Dist. LEXIS 10269 (S.D.N.Y. Jan. 28, 2016)....................................15

<u>Gross v. FBL Fin. Servs.</u>,
  557 U.S. 167 (2009)...........................................................................................10

<u>Jenkins v. N.Y. City Dept. of Educ.</u>,
  2011 U.S. Dist. LEXIS 130815 (S.D.N.Y. Nov. 9, 2011) ......................................16

<u>Johnson v Andy Frain Servs.</u>,
  638 F. App'x 68 (2d Cir 2016) ............................................................................10

<u>Kamholtz v. Yates County</u>,
  350 F. App'x 589 (2d Cir. 2009) .........................................................................17

<u>Lewis v. Turning Point Brooklyn, Inc.</u>,
  2019 U.S. Dist. LEXIS 54398 (E.D.N.Y. Mar. 29, 2019) ....................................14

<u>Liang v. City of N.Y.</u>,
  2013 U.S. Dist. LEXIS 136795 (E.D.N.Y. Sep. 18, 2013)....................................19

<u>Lopez v. N.Y. City Dept. of Educ.</u>,
  2020 U.S. Dist. LEXIS 133548 (S.D.N.Y July 28, 2020) .................................14, 15

<u>Marcus v. Leviton Mfg. Co.</u>,
  661 F. App'x 29 (2d Cir. 2016) ...........................................................................12

<u>Mazzeo v. Mnuchin</u>,
  751 F. App'x 13 (2d Cir. 2018) ...........................................................................12

<u>McManamon v. Shinseki</u>,
  2013 U.S. Dist. LEXIS 96087 (S.D.N.Y. July 9, 2013) ........................................12

<u>Morey v. Windsong Radiology Group, P.C.</u>,
  794 F. App'x 30 (2d Cir. 2019) ...........................................................................12

<u>Nadel v. Shinseki</u>,
  57 F. Supp 3d 288 (S.D.N.Y. 2014)......................................................................16

<u>Pedrosa v. City of N.Y.</u>,
  2014 U.S. Dist. LEXIS 3315 (S.D.N.Y. Jan. 9, 2014)...........................................18

<u>Pierce v. Fordham Univ.</u>,
  692 F. App'x 644, (2d Cir. 2017) .........................................................................12

<u>Seitz v. New York</u>,
  2019 U.S. Dist. LEXIS 169680, (E.D.N.Y. Sep. 30, 2019)...................................12

<u>Smith v. Bronx Cmty. Coll. Ass'n</u>,
  2017 U.S. Dist. LEXIS 25632, (S.D.N.Y. Feb. 23, 2017)......................................11

Terry v. N.Y. City Dept. of Educ.,
    2015 U.S. Dist. LEXIS 111896 (S.D.N.Y. Aug. 11, 2015) .................................................18

Washington v. N.Y. City Dept. of Educ.,
    740 F. App'x 730 (2d Cir 2018) ...............................................................................................8

Woodlock v. Orange Ulster B.O.C.E.S.,
    281 F. App'x 66 (2d Cir. 2008) ........................................................................................16, 17

Woolf v. Strada,
    792 F. App'x 143 (2d Cir. 2020) ............................................................................................12

Zamora v Fit Intl. Group Corp.,
    834 F. App'x 622 (2d Cir 2020) .............................................................................................19

Zembiec v. County of Monroe,
    468 F. App'x 39 (2d Cir 2012) ...............................................................................................16

**Statutes**

29 U.S.C. § 152(2) .................................................................................................................15

ADEA ..........................................................................................................................1, 2, 7, 9

ADA ....................................................................................................................1-2, 12-15

Rehabilitation Act .........................................................................................................1, 2, 12-15

NLRA ...............................................................................................................................1-3, 15

**Other Authorities**

F.R.C.P. 12(b) .........................................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff, a teacher previously employed by the New York City Board of Education, "BOE" (doing business as the "New York City Department of Education"), asserts claims of discrimination and retaliation under the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. §§ 621, et seq., the Americans with Disabilities Act of 1990, ("ADA") 42 U.S.C. §§ 12132, et seq., Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796, National Labor Relations Act ("NLRA"), 29 U.S.C. § 158, and Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, as well as  the First, Fifth and Fourteenth Amendments of the United States Constitution against Defendants.

As discussed further below Plaintiff was terminated for incompetence following an Education Law 3020-a proceeding.  This proceeding is entitled to preclusive effect, accordingly, plaintiff is collaterally estopped from proving that his age was the "but for" cause of his termination, and therefore collaterally estopped from asserting an ADEA discrimination claim on that basis.

In addition, Plaintiff fails to allege facts supporting an inference that his age was the "but for" cause of any alleged adverse action as required to plead a cause of action under the ADEA.  Plaintiff's allegations do not establish the existence of a younger comparator and in fact suggest that both younger and older teachers had issues with classroom management but were not disciplined.  Further, while Plaintiff fails to alleges facts to support his bald allegation that he received negative ratings due to either his experience level or his decision to take a sabbatical.

Plaintiff's ADA and Rehabilitation Act claims must fail as Plaintiff fails to establish a causal connection between any protected activity and any alleged adverse action.  A one year gap exists between the latest protected activity Plaintiff argues he engaged in prior to his termination in Spring 2015 and the latest the statute of limitations would extend to on July 5,

1

2016.  Such a gap is too great to draw any inference of causation based on temporal proximity, and Plaintiff alleges no facts from which a causal connection could otherwise be inferred.  With respect to Plaintiff's NLRA claims, Defendants are not employers under the NLRA, a fact that is conceded by Plaintiff, and accordingly this cause of action is entirely without merit.

Plaintiff's due process claims must also fail as Plaintiff's allegations concede that he was provided with due process – he was given a hearing at which he had received charges, he had the opportunity to review and respond to the BOE's evidence and present a defense, in addition to the post deprivation remedy available in the form of an Article 75 proceeding. Finally, Plaintiff's RICO claims are insufficient as Plaintiff alleges no facts suggesting Defendants were aware of and intended to facilitate any criminal endeavor to fulfill the "purpose" requirement of an enterprise to support his RICO claim.  Accordingly Defendants ask that Plaintiff's Third Amended Complaint ("TAC") be dismissed in its entirety.

## STATEMENT OF FACTS[1]

Plaintiff was employed by the BOE as a teacher in 1995 and began working at the Bronx Guild High School ("BGHS") in 2005.  See Third Amended Complaint Annexed to the Green Dec. as Exhibit "C", ECF Dkt. No. 44 at ¶ 25, 28.  Samuel Decker became Principal of BGHS in 2006 and remained the Principal until 2017.  See id. at ¶ 4.  Plaintiff suffered back injuries as a result of a car accident in the 2008-2009 school year which "required extensive medical attention."  See id. at ¶¶ 32, 133.  Plaintiff alleges he wrote to Principal Decker on November 28, 2008 regarding assigning co-teachers for special education students.  See id. at ¶ 33, 127.  A related union complaint was made in Spring 2009 and a BOE investigation was

---

[1] This statement of facts is derived from the allegations in Plaintiff's Third Amended Complaint, and the Exhibits annexed to the Declaration of Nicholas Green dated April 20, 2021 "Green Dec." Plaintiff's material factual allegations are assumed to be true for purposes of this motion to dismiss only.

initiated.  See id. at ¶ 159.  Plaintiff alleges this investigation resulted in a reprimand of Principal

Decker and that BGHS devoted addition resources to Special Education moving forward.  See id.

Plaintiff alleges that following his November 28, 2008 letter Principal Decker stated he had not

seen paperwork regarding the injury Plaintiff sustained in his car accident and did not know

whether Plaintiff had actually sustained an injury.  See id. at ¶ 34.

Plaintiff alleges during the 2008-2009 school year injuries he sustained related to

the car accident "required extensive medical attention."  See id. at ¶ 133.  Plaintiff alleges he

received an unsatisfactory rating in the 2008-2009 school year, but a satisfactory rating in the

2009-2010 school year.  See id. at ¶¶ 34-35.

Plaintiff published a book in 2012 which was critical of "business oriented

education reform" and "many NYC DOE programs and policies."  See id. at ¶ 38, n. 11, 130 .

Plaintiff alleges this book contained excerpts of a November 28, 2008 email in which Plaintiff

inquired regarding the availability of staff for Collaborative Team Teaching and assistance with

specific students assigned Indeiviual Education Plans.  See id. at ¶ 127, n 44.  Plaintiff received

an Effective annual rating in 2013-2014.  See id. at ¶ 43.  Plaintiff applied for a sabbatical in the

Spring of 2015 to write regarding  "the positions on slavery of 8 major American figures, as well

as John Locke" and "the use of films and videos to enhance…curriculum in high school Social

Studies."  See id. at 45, n 12.  Plaintiff's sabbatical application was approved, although Plaintiff

alleges he was initially told by an unidentified United Federation of Teachers ("UFT")

representative that Superintendent Carron Staple wanted to deny the sabbatical "because of my

three years of previous leave."  See id. at ¶¶  46-47.  Plaintiff submitted his sabbatical writings in

August of 2015.  See id. at 45, n 12.  Plaintiff did not receive a rating in the 2014-2015 school

year. See id. at ¶ 47.

Plaintiff alleges that following his return from sabbatical in the 2015-2016 school year he was scheduled to undergo six observations and was not assigned a dedicated classroom or work area. See id. at ¶¶ 49, 51. Plaintiff received positive feedback from Principal Decker in classroom visits and email in September and October of 2015. See id. at ¶ 52. Plaintiff alleges he received negative feedback beginning in November 2015 following a classroom visit by Carron Staple and a field trip attended by Plaintiff's students in which students "vandalized buildings, played with fire extinguishers, and behaved in such a manner to get the school banned from the facility." See id. at ¶¶ 53-54. Plaintiff also alleges Principal Decker may have become aware around that time that the school was going to be put on the priority list, as it subsequently was in March of 2016 due to falling graduation rate, low math scores and college readiness rate of 3%. See id. at ¶ 57. Plaintiff alleges he "brought up" to colleagues that many of his students were mandated for Integrated Co-Teaching and that some of his classes had over 40% special education students. See id. at ¶¶ 55, 127. Plaintiff alleges he only spoke with Principal Decker regarding "special education protocols and student achievement levels." See id. at ¶127. Plaintiff was assigned a co-teacher in spring 2016. See id.

Principal Decker observed Plaintiff's classroom on November 20, 2015. See id. at ¶ 60. Plaintiff admits "it was not my best class, certainly not representative of the other times Mr. Decker had observed me" and alleges the date near the Thanksgiving holiday and cancelled school trip made the date a poor one for his evaluation. See id. at ¶ 61. Plaintiff was observed again on March 9, 2016 by Assistant Principal Cecily Rauner and by Principal Decker on May 1, 2016. See id. at ¶¶ 65-66. Plaintiff alleges that he received feedback from the November 20, 2015 observation on March 17th, 2016, and feedback from the May 1, 2016 evaluation until May 18, 2016. See id. at ¶ 66. Plaintiff alleges his May 1, 2016 observation was also altered to be

recorded as a formal observation.  See id. at ¶ 67.  Plaintiff received an ineffective annual rating

for the 2015-2016 school year and was placed on a teacher improvement plan.  See id. at ¶ 68.

Plaintiff appealed this rating through a grievance process and his appeal was denied after a May

26, 2017 hearing by letter dated June 14, 2017.  See id. at ¶ 74.

Plaintiff was observed six times during the 2016-2017 school year and met

weekly with Ms. Ghanowi for coaching.  See id. at ¶ 69.  Plaintiff was observed on October 26,

2016; November 30, 2016; February 6, 2017; February 13, 2017; March 6, 2017; and April 28,

2017.  See id. at ¶ 71.  These evaluations rated Plaintiff below effective at "developing."  See id.

at ¶ 80.  Plaintiff alleges Principal Decker verbally reprimanded Plaintiff for placing his coat on a

book car and commented that he "should check into getting a new laundry" at some point during

the 2016-2017 school year.  See id. at ¶ 141.  Plaintiff also alleges he was accused by Assistant

Principal Rauner of verbal abuse of a student "based on a written anecdotal report."  See id. at ¶

142.

## DISCIPLINARY CHARGES AND PROCEDURAL HISTORY

Plaintiff was served with Education Law § 3020-a charges for ineffective teaching

on May 31, 2017.  See id. at ¶¶ 81, 144.  The specifications for Plaintiff's Education Law §

3020-a proceedings included Plaintiff's evaluations from the 2015-2016 school year.  See id. at ¶

65.  A preliminary hearing was held on July 12, 2017, and the hearing took place on September

26, October 2, 6, 11, 19, 23 and 24; and November 1, 17, 28 and 29 at the BOE's offices located

at 100 Gold Street in New York City.  See id. at ¶ 83; see also January 4, 2018 Opinion and

Award, annexed to the April 27, 2021 Declaration of Nicholas Green ("Green Dec.") as Exhibit

"E."  Plaintiff alleges that Principal Decker shredded low inference notes regarding Plaintiff's

observations, which were not available at evidence at the hearing.  See id. at ¶¶ 20 n. 5, 95.

Hearing Officer Robert Barron issued an Opinion and Award terminating Plaintiff on January 4,

2018.  See id. at ¶ 103; see also Exhibit E at 69.  Plaintiff was escorted from BOE premises on January 29, 2018 and received a letter of termination on March 12, 2018.  See id. Plaintiff filed a complaint with the State Division of Human Rights on May 25, 2018 which was deemed dually filed with the EEOC and received a right to sue letter on April 9, 2019.  See id. at ¶ 115.

Plaintiff commenced an Article 75 proceeding challenging the determination of Hearing Officer Barron on January 12, 2018, and an order was entered by the New York State Supreme Court finding that there was adequate evidence in the record and a rational basis for the Hearing Officer's determination, but finding Plaintiff's termination "shocking to the conscience" and remanding for a lesser penalty on January 4, 2019.  See Matter of Ford v Bd. of Educ. of the City Sch. Dist. of the City of NY, 2019 NY Slip Op 50009[U], *1 (Sup. Ct., N.Y. County 2019)(reversed at Matter of Ford v. Bd. of Educ. of the City Sch. Dist. of the City of NY, 188 A.D.3d 415, 415 (1st Dep't 2020).  The First Department reversed the decision of the Supreme Court on November 5, 2020 and upheld Plaintiff's Termination as not "shocking to the conscience."  See November 5, 2020 First Department Decision, annexed hereto as Exhibit "D."

Plaintiff commenced this action on July 5, 2019.  See Complaint, annexed as Exhibit "A" to the April 20, 2021 Declaration of Nicholas Green ("Green Dec.").  The Court, after granting Plaintiff's application to proceed in forma pauperis on October 29, 2019, dismissed Plaintiff's complaint and granted Plaintiff sua sponte leave to file an Amended Complaint by order dated November 6, 2019.  See November 6, 2019 Order, annexed as Exhibit "B" to the Green Dec.  Plaintiff filed an Amended Complaint on March 8, 2020, and a Second Amended Complaint on November 30, 2020.  See ECF Dkt. Nos. 11, 31.  Plaintiff was subsequently granted leave to file a Third Amended Complaint, (the "TAC") and did so as of February 1, 2021.  See ECF DKT No. 43; see also TAC.

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citation omitted). Further, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678. Thus, a plaintiff must plead facts sufficient to demonstrate "more than a sheer possibility that a defendant has acted unlawfully . . . [and] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,'" and must, therefore, be dismissed. Id.; see also Twombly, 550 U.S. at 557, 570 (stating that because the complaint had not nudged Plaintiff's claims "across the line from conceivable to plausible," the complaint must be dismissed).

## ARGUMENT

### POINT I

### PLAINTIFF'S ADEA CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL

"The doctrine of collateral estoppel bars re-litigation of a legal or factual issue that was previously decided where: '(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was

necessary to support a valid and final judgment on the merits." See Washington v. N.Y. City Dept. of Educ., 740 F. App'x 730, 732 (2d Cir 2018).  A New York Education Law "Section 3020-a hearing is a quasi-judicial administrative action whose findings are entitled to preclusive effect."  See id. (citing Burkybile v. Bd. of Educ., 411 F.3d 306, 308, 311-12 (2d Cir. 2005), cert. den. 546 U.S. 1062 (2005)).

Here, Plaintiff seeks to challenge his termination, but Plaintiff's termination was already at issue in and occurred following a disciplinary hearing held pursuant to § 3020-a of the New York Education Law.  See TAC at ¶ 103.  Plaintiff admits that following his Education Law § 3020-a proceeding, a hearing officer sustained charges of incompetence and imposed a penalty of termination against him.  See TAC at ¶ 104.  Therefore Plaintiff litigated and the hearing officer at Plaintiff's Education Law 3020-a § proceeding decided the question of whether Plaintiff's performance warranted his termination.  Plaintiff had a full and fair opportunity to litigate the matter across his multi-day hearing, including the opportunity to present evidence and cross examine BOE witnesses.  See TAC at   ¶¶ 20 n. 5, 102.  Further, the result of the hearing and penalty were appealed by Plaintiff in an C.P.L.R. Article 75 proceeding and subsequently upheld by the Appellate Division, First Department.  See Exhibit D.  The First Department held "[w]e do not find the penalty of termination of petitioner's employment as a teacher shocking to one's sense of fairness…given the evidence of petitioner's pedagogical shortcomings, documented by supervisors and a peer evaluator, and his lack of improvement during two school years."  See Exhibit D at 1 (internal citations omitted).

Because Plaintiff's termination occurred as a result of an Education Law 3020-a § proceeding which upheld charges of incompetence, he is collaterally estopped from proving that his age was the "but for" cause of his termination.  See Davis v. N.Y. City Dep't/Bd. of Educ.,

No. 14 Civ. 2281(KAM)(LB), 2015 U.S. Dist. LEXIS 131719, *11 (E.D.N.Y. August 19, 2015)(adopted at Davis v. N.Y. City Dep't./Bd. of Educ., No. 14 Civ. 2281(KAM)(LB), 2015 U.S. Dist. LEXIS 131466, at *6 (E.D.N.Y. Sep. 29, 2015)).   Just as in Davis, in order to demonstrate that age was the "but for" cause of his discipline, Plaintiff would be contesting the charges against him which have already been adjudicated in an Education Law § 3020-a proceeding, and affirmed by the First Department.   See id.   The hearing officer at the 3020-a proceeding already determined there was a legitimate, non-discriminatory reason for Plaintiff's discipline, and Plaintiff is barred from challenging that determination.   Plaintiff has already appealed the results of the hearing in an Article 75 proceeding and his discipline was ultimately affirmed by the First Department.   See Exhibit D.   As a result he is collaterally estopped from re-litigating again the validity of his termination here, and his claims of age discrimination with respect to his termination must be dismissed.   See Davis, U.S. Dist. LEXIS 131466, at *6.

## POINT II

### PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ADEA

"To establish a prima facie case of age discrimination, a plaintiff must show that (1) [he] is within the protected age group, (2) [he] was qualified for the position, (3) [he] experienced adverse employment action, and (4) such action occurred under circumstances giving rise to an inference of discrimination" See Bernstein v NY City Dept. of Educ., No. 19 Civ. 11816 (LJL), 2020 U.S. Dist LEXIS 209365, at *10-11 (S.D.N.Y. Nov. 9, 2020). Moreover, under the ADEA, a plaintiff must prove that discrimination was the "but for" cause of the alleged adverse actions. See Gross v. FBL Fin. Servs., 557 U.S. 167, 177 (2009).   In order to state a claim "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at

least minimal support for the proposition that the employer was motivated by discriminatory intent." See Johnson v Andy Frain Servs., 638 F. App'x 68, 70 (2d Cir 2016)(citations omitted). A plaintiff must allege a materially adverse change in their employment to allege an adverse action, and "[t]o be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." See Bernstein, 2020 U.S. Dist. Lexis 209365, at *11.

Here, Plaintiff has alleged no facts which suggest his age was the "but for" cause of his termination or any other alleged adverse action. Plaintiff's bald allegation that "other employees, including younger employees, had similar difficulties in managing the classroom and were not similarly disciplined or given equally low ratings" does not plausibly suggest the existence of a younger comparator. See TAC at ¶ 115. In order create an inference of discrimination through a comparator, Plaintiff must allege that he engaged in an act of comparable seriousness, but was punished more severely than similarly situated, younger coworkers. See Blair v. New York City Transit Auth., No. 14 Civ. 5091 (ENV), 2016 U.S. Dist. LEXIS 149191, at *11-12 (E.D.N.Y. Oct. 12, 2016) (citations omitted). Plaintiff's vague allegation that other unidentified teachers "had similar difficulties in managing the classroom" does not establish that any alleged comparator's performance was similarly deficient as Plaintiff's performance over the two school years in question, nor does this vague allegation even hint that these unnamed individuals received different treatment than Plaintiff. Moreover, Plaintiff alleges that both older and younger teachers were not disciplined for difficulties with classroom management, indicating there was no differing treatment between older and younger teachers.

Plaintiff alleges that because his ratings dropped following his "15 year longevity increment" it can be inferred his ratings were caused by his age.  See TAC at ¶ 117.  However, the "15 year longevity increment" has no clear relationship to age, and the mere allegation that Plaintiff was more experienced and thus older when he was disciplined does not suggest his age was the "but for" cause of his ratings.  See Caputo v. Copiague Union Free Sch. Dist., 218 F. Supp. 3d 186, 195-96 (E.D.N.Y. 2016) ("no such inference [of age discrimination] can be made as to institution of 3020-a proceeding merely because plaintiff was the oldest of principals and assistant principals and she had a good service record").

Similarly, Plaintiff's claim that his discipline may have been related to his sabbatical does not suggest any inference of discrimination on the basis of age, as there are no facts to establish the age of teachers who took sabbaticals or even that the majority of teachers who took sabbaticals belonged to Plaintiff's protected class.  See TAC at ¶ 117.  Plaintiff's allegation that only tenured "senior" teaches could take sabbaticals is insufficient to establish the age of teachers who took sabbaticals.  See id.  In any event, Plaintiff's allegation that his negative rating was somehow related to his sabbatical is unsupported by any facts beyond Plaintiff's speculation, and his belief is simply not sufficient to establish an inference of discrimination.  See Smith v. Bronx Cmty. Coll. Ass'n, No. 16 Civ. 3779 (JMF), 2017 U.S. Dist. LEXIS 25632, at *5 (S.D.N.Y. Feb. 23, 2017) ("a plaintiff's subjective belief that she was the victim of discrimination, no matter how strongly felt, is insufficient to satisfy the burden to plead facts that could plausibly support an inference of discrimination.")

Therefore, Plaintiff's ADEA claim fails to allege facts supporting an inference of discrimination and his claim should be dismissed.  See Marcus v. Leviton Mfg. Co., 661 F. App'x 29, 32-33 (2d Cir. 2016).

**POINT III**

**PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION UNDER THE ADA OR REHABILIATION ACT**

As the ADA and the Rehabilitation Act provide similar protections and impose identical pleading requirements, claims under both statutes are considered together.  See Pierce v. Fordham Univ., 692 F. App'x 644, 646, n 2 (2d Cir. 2017); see also Seitz v. New York, No. 18 Civ. 4149 (PKC), 2019 U.S. Dist. LEXIS 169680, at *35 (E.D.N.Y. Sep. 30, 2019).  To establish a *prima facie* case of retaliation under these statutes, plaintiff must show that: (1) he engaged in a protected activity, (2) his employer was aware of the activity, (3) the employer took an adverse employment action against him, and (4) a causal connection exists between the protected activity and the adverse employment action.  See Woolf v. Strada, 792 F. App'x 143, 145 (2d Cir. 2020); see also Morey v. Windsong Radiology Group, P.C., 794 F. App'x 30, 33 (2d Cir. 2019). However, the Rehabilitation Act applies only to federally funded programs.  See Bryant v. N.Y. Educ. Dep't, 692 F.3d 202, 216 (2d Cir. 2012).  To constitute protected activity "a complaint must be 'sufficiently pointed to be reasonably understood as a complaint of discrimination' and the plaintiff must 'possess a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'"  See McManamon v. Shinseki, No. 11-cv-7610 (PAE), 2013 U.S. Dist. LEXIS 96087, at *29 (S.D.N.Y. July 9, 2013)(citations omitted).

"To plausibly allege a materially adverse employment action, a plaintiff must allege that his employer's conduct resulted in a harm that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  See Mazzeo v. Mnuchin, 751 F. App'x 13, 16 (2d Cir. 2018) (quoting Burlington N. & Santa Fe Ry., 548 U.S. at 56 (2006)).  While a causal connection may be demonstrated through temporal proximity, the

temporal proximity must be "very close."  See Dhar v. City of N.Y., 655 F App'x 864, 865-866
(2d Cir 2016)(citations omitted).

Plaintiff alleges that he advocated for the assignment of co-teachers for special
education students and complained regarding the ratio of special education students in
classrooms and was retaliated against as a result.  For  the following reasons Plaintiff's ADEA
and Rehabilitation Act retaliation claims must be dismissed.

### A.    Protected Activity

Here, Plaintiff argues that prior to his termination he engaged in protected activity
by (1) writing an email to Principal Decker on November 30, 2008 and filing a UFT special
education complaint, (2) publishing a book in December of 2012 or January 2013, and (3) taking
a sabbatical in Spring 2015.  See TAC at ¶ 127.   The email which Plaintiff claims was included
in the book he published in December of 2012 or January of 2013 does not appear to make any
complaints regarding assignment of co-teachers or other student special education related issues.
See id. at ¶¶ 127, n. 44.  Rather, Plaintiff merely raises questions, writing "I would like some
clarification as to the Collaborative Team Teaching Model for IEP students" and "who else
makes up the teams for the IEP students?"  See id.  Plaintiff's email raises no complaint, and
therefore it is unclear how it's inclusion, or Plaintiff's vague assertion that he was critical of the
BOE in his book, would oppose discrimination and constitute protected activity.

Additionally, Plaintiff alleges that his taking of a sabbatical and related writings
in Spring 2015 were protected activity, but his allegations establish that his sabbatical writings
were on an entirely separate topic from his complaints regarding co-teaching.  Instead he wrote
regarding  "the positions on slavery of 8 major American figures, as well as John Locke" and
"the use of films and videos to enhance…curriculum in high school Social Studies."  See TAC at
¶ 45, n 12. Despite offering a fairly detailed explanation of the range of academic issues

addressed by Plaintiff's sabbatical writings, Plaintiff no where alleges that the topics he addressed implicated the provision of services to special education students within the school or any form of disability based discrimination.  As a result, Plaintiff's sabbatical writings do not constitute protected activities.  See Lewis v. Turning Point Brooklyn, Inc., No. 17 Civ. 7560 (FB)(RLM), 2019 U.S. Dist. LEXIS 54398, at *10 (E.D.N.Y. Mar. 29, 2019).

Nor did Plaintiff make complaints outside of his sabbatical writings.  Plaintiff admits that "[a]fter 2008, Mr. Ford did not file complaints about special education practices." See TAC at ¶ 159.  Plaintiff specifically alleges that he "brought up" issues regarding Integrated Co-Teaching and that some of his classes had over 40% special education students only with colleagues in 2015, and spoke more generally with Principal Decker regarding "special education protocols and student achievement levels."   See id. at ¶¶ 55, 127.  Plaintiff's allegations suggest that he kept his complaints from BOE administration.  Plaintiff has failed to plausibly allege that Defendants were aware of any alleged protected activity Plaintiff engaged in during the 2015-2016 school year..  See Lopez v. N.Y. City Dept. of Educ., No. 17-CV-9205 (RA), 2020 U.S. Dist. LEXIS 133548, at *36-37 (S.D.N.Y July 28, 2020) (dismissing ADA and Rehabilitation Act claims where Plaintiff's allegations did not support Defendants' knowledge of Plaintiff's Complaints).  Additionally, as both the filing of Plaintiff's Federal Complaint on July 5, 2019 and Plaintiff's SDHR Complaint on May 25, 2018 occurred after Plaintiff's termination on March 12, 2018, they could not form the basis of any retaliatory acts.  See Exhibit A at 6; see also TAC at ¶ 103.

**B.**      **Causal Connection**

Even assuming Plaintiff did engage in protected activity in November 2008 he fails to allege a causal connection between  those complaints and any adverse action.  Plaintiff alleges he received his first negative rating beginning in November 2015, seven years after he

alleges he complained regarding the assignment of co-teachers in November 2008.  See TAC at ¶ 60.  Even if the later publishing of Plaintiff's book constituted protected activity, there is still an almost three year gap between its publication in January 2013 and Plaintiff's first negative rating in November 2015.  In either instance there is simply too large a gap of time to suggest an inference of retaliation based on temporal proximity.  See Graham v. Macy's, Inc., No. 14 Civ. 3192 (PAE), 2016 U.S. Dist. LEXIS 10269, at *24 (S.D.N.Y. Jan. 28, 2016) (noting in ADA retaliation claim that, although "the Second Circuit 'has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation,' . . . courts in this Circuit generally hold that a gap longer than two months severs the inferred causal relationship."), aff'd, 675 F. App'x 81 (2d Cir. 2017).Plaintiff also admits that he had already begun receiving negative ratings at the time he complained to coworkers regarding special education issues during the 2015-2016 school year.  See TAC at ¶ 128.

Additionally, a three year statute of limitations applies to Plaintiff's Rehabilitation Act and ADEA claims.  See Doyle v United Airlines, Inc., 914 F. Supp. 2d 325, 334 (E.D.N.Y. 2012); see also Lopez v. N.Y. City Dept. of Educ., No. 17-CV-9205 (RA), 2020 U.S. Dist. LEXIS 133548, at *14 (S.D.N.Y July 28, 2020).  As Plaintiff commenced this action on July 5, 2019, the statute of limitations would only extend to July 5, 2016.  See Exhibit A.  As the latest protected activity Plaintiff makes any argument in support of prior to his termination occurred in the Spring of 2015, there is at least a year separating any protected activity and any actionable adverse action, too long a gap to infer any causal connection.  As Plaintiff alleges no statements by Principal Decker indicating retaliatory intent or other circumstances from which an inference of causation could be inferred his ADEA and Rehabilitation Act claims must be dismissed.  See Nadel v. Shinseki, 57 F. Supp 3d 288, 299 (S.D.N.Y. 2014).

POINT IV

THIS COURT LACKS SUBJECT MATTER
JURISDICTION OVER PLAINTIFF'S NLRA
CLAIMS

This Court lacks subject matter jurisdiction over Plaintiff's NLRA claims as
Defendants are not employers under the NLRA.  See 29 U.S.C. § 152(2); see also Jenkins v.
N.Y. City Dept. of Educ., No. 10 CV 6159 (BSJ)(THK), 2011 U.S. Dist. LEXIS 130815, at *18
(S.D.N.Y. Nov. 9, 2011); D'Onofrio v. City of N.Y., No. 07 CV 0731 (CBA)(LB), 2010 U.S.
Dist. LEXIS 124160, at *36 (E.D.N.Y. Sep. 13, 2010).  Plaintiff concedes this point in his TAC.
See TAC at ¶ 125.  Accordingly, Plaintiff's NLRA claims must be dismissed.

POINT V

PLAINTIFF FAILS TO STATE A CLAIM FOR
RETALIATION IN VIOLATION OF THE
FIRST AMENDMENT

With respect to Plaintiff's First Amendment retaliation claim, Plaintiff must prove
that: "(1) [he] engaged in constitutionally protected speech . . . ; (2) [he] suffered an adverse
employment action; and (3) the speech was a 'motivating factor' in the adverse employment
decision."  See Zembiec v. County of Monroe, 468 F. App'x 39, 40 (2d Cir 2012)(citations
omitted).  "In determining whether a public employee has engaged in constitutionally protected
speech, this court must first determine 'whether the employee spoke as a citizen on a matter of
public concern.'"  See Woodlock v. Orange Ulster B.O.C.E.S., 281 F. App'x 66, 68 (2d Cir.
2008)(citing Garcetti v. Ceballos, 547 U.S. 410, (2006)); see also Bloomberg v NY City Dept. of
Educ., 410 F. Supp. 3d 608, 621 (S.D.N.Y. 2019).   Where an employee makes statements
pursuant to their official duties as an employee those statements are not made as private citizens.
See id.  Further, statements regarding an individual's work activities are generally not a matter of
public concern.  See Kamholtz v. Yates County, 350 F. App'x 589, 591 (2d Cir. 2009).

Courts have found that where an educational employee reports concerns regarding resources provided to students they are speaking pursuant to their official duties.  See Woodlock, 281 F. App'x 66, 68.  The facts here are analogous to the facts in Woodlock, in which the court found the plaintifff's "communications regarding M.C. and the lack of physical education and art classes at the Cornwall satellite were made pursuant to her 'official duties' as a special education counselor, in which capacity she was responsible for monitoring her students' behavior, needs, and progress."  See id.  Plaintiff here alleges that he advocated for the assignment of co-teachers for special education students in an email from his work account and by a UFT special education complaint.  Both the concerns and method of this complaint are directly related to his role as a teacher and the resources provided to him in the classroom.  Although Plaintiff was not in a counselor role, as a teacher he was similarly responsible for ensuring special education students within his classroom received adequate educational support, and the assignment of co-teachers was directly related to that duty.  The facts here are also analogous to Bloomberg, in which a principal advocated for resources and extracurricular sports teams for her students.  See Bloomberg, 410 F. Supp. 3d 608 at 621.  Plaintiff here also advocated for the assignment of resources for students he worked with as part of his job, and therefore Plaintiff's speech was not made as a private citizen.

Additionally, Plaintiff's complaints in each instance stemmed from his grievance that he was observed and rated where he was not provided a co-teacher.  See TAC at ¶ 62. Because this allegation focused on his work performance and assessment it would not constitute a matter of public concern.  See Pedrosa v. City of N.Y., No. 13 Civ. 01890 (LGS), 2014 U.S. Dist. LEXIS 3315, at *35 (S.D.N.Y. Jan. 9, 2014).  Claims that are centered around the individual's personal situation do not rise to a level sufficient to satisfy the "public concern"

threshold.  As reflected in the November 30, 2008 email provided by Plaintiff, his concerns were centered on his own classroom and teaching conditions, which are not a matter of public concern.  <u>See</u> TAC ¶ 127, n. 44.  Plaintiff's speech was therefore neither made as a private citizen or on a matter of public concern, and Plaintiff's First Amendment Retaliation Claim must fail.

POINT VI

**PLAINTIFF FAILS TO STATE A CLAIM FOR
VIOLATION OF DUE PROCESS**

Plaintiff's 3020-a proceeding afforded Plaintiff adequate due process prior to his termination.  "[T]he tenured public employee is entitled to oral or written notice of the charges against [him], an explanation of the employer's evidence, and an opportunity to present [his] side of the story."  <u>See</u> <u>Terry v. N.Y. City Dept. of Educ.</u>, No. 13cv7873, 2015 U.S. Dist. LEXIS 111896, at *4 (S.D.N.Y. Aug. 11, 2015).  Here, Plaintiff received charges, and across the 3020-a hearing had the opportunity to review BOE evidence and present his own evidence in response. <u>See</u> Tac at ¶¶ 20 n. 5, 81, 102, 144.  These facts are on all four with those alleged in <u>Terry</u>, in which the court found plaintiff had failed to allege facts supporting a claim of substantive or procedural due process violations relating to her termination.  <u>See Terry</u>, 2015 U.S. Dist. LEXIS 111896, at *5.  The same result should follow here, where Plaintiff's allegations demonstrate he received both a full hearing and a post deprivation remedy in the form of an Article 75 proceeding. In addition, the availability of an Article 75 or Article 78 proceeding defeats a stigma plus claim.  <u>See</u> <u>Cohen v. Walcott</u>, No. 13-cv-9181 (JGK),  2017 U.S. Dist. LEXIS 97500 at 8-9 (S.D.N.Y. June 23, 2017).

POINT VII

**PLAINTIFF FAILS TO STATE A CLAIM FOR
VIOLATION OF RICO**

The RICO statute makes it unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  See First Capital Asset Mgt. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir 2004)(quoting 18 U.S.C. § 1962(c)).  "To state a claim for relief under RICO, a plaintiff must plead: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  See Zamora v Fit Intl. Group Corp., 834 F. App'x 622, 625 (2d Cir 2020)(citations omitted).  A enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  See id. To meet the purpose requirement a plaintiff must plead that "the members of the association 'share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.'"  See id. (citing Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013)).

Here, Plaintiff alleges no facts suggesting Defendants were aware of and intended to facilitate any criminal endeavor to fulfill the "purpose" requirement of an enterprise to support his RICO claim.  See Liang v. City of N.Y., No. 10-CV-3089 (ENV) (VVP), 2013 U.S. Dist. LEXIS 136795, at *46 (E.D.N.Y. Sep. 18, 2013).  Indeed, Plaintiff's only reference to his RICO claim does nothing more than to speculate that if there were evidence of a corrupt enterprise engaged in by Defendants liability might follow.  See Tac at ¶ 174.  This bald speculation is not sufficient to plausibly suggest any facts supporting a criminal endeavor, fails to establish any of the required elements of a RICO claim, and Plaintiff's RICO claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the Third Amended Complaint, together with such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              April 27, 2021

                              **JAMES E. JOHNSON**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-176
                              New York, New York 10007
                              (212) 356-2445
                              nigreen@law.nyc.gov


                       By:    /s/ *Nicholas Green*
                              _____
                              Nicholas Green
                              Assistant Corporation Counsel

Joseph Anci,
Nicholas Green,
   Of Counsel.