No. 19 Civ. 6327 (JPC)(KHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN FORD,

                              Plaintiff,

            -against-

THE NEW YORK CITY BOARD OF EDUCATION (a/k/a the Department of Education) Carmen Farina in her official capacity as Chancellor,

                              Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street - Room 2-176*
*New York, NY 10007*

*Of Counsel: Nicholas Green*
*Tel:  (212) 356-2445*
*Matter No.:  2020-026533*

Joseph Anci,
Nicholas Green,
  Of Counsel

1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 2

<u>MOTION TO DISMISS STANDARD</u> ..................................................................................... 6

ARGUMENT ............................................................................................................................... 6

    POINT I ........................................................................................................................... 6

        PLAINTIFF'S SOLE CLAIM IS BARRED BY
        COLLATERAL ESTOPPEL ...................................................................... 6

    POINT II .......................................................................................................................... 9

        PLAINTIFF FAILS TO STATE A CLAIM FOR
        RETALIATION UNDER THE
        REHABILITATION ACT ........................................................................... 9

        A.  Applicable Standard ............................................................................ 9

        B.  Plaintiff Fails to Allege that Defendants were
            Aware of Any Protected Activity ...................................................... 10

        C.  Plaintiff Fails to Allege a Plausible Causal
            Connection ......................................................................................... 12

CONCLUSION ........................................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
 556 U.S. 662 (2009)...................................................................................................................6

Bell Atl. Corp v. Twombly,
 550 U.S. 544 (2007)...................................................................................................................6

Garcia v. Yonkers Bd. of Educ.,
 803 F. App'x 441, 444 (2d Cir. 2020).......................................................................................9

Smith v. N.Y. City Dept. of Educ.,
 808 F. Supp 2d 569, 580, 582 (S.D.N.Y. 2011).........................................................................9

Bodenmiller v. County of Suffolk,
 2021 U.S. Dist. LEXIS 165458, at *30 (E.D.N.Y. Aug. 30, 2021)..........................................12

Bryant v. N.Y. Educ. Dep't,
 692 F.3d 202 (2d Cir. 2012).....................................................................................................10

Gentile v. Potter,
 509 F Supp 2d 221, 239 (E.D.N.Y. 2007) ...............................................................................12

Birch v. City of New York,
 184 F. Supp. 3d 21, 32 (E.D.N.Y. 2016) .................................................................................13

Davis v. N.Y. City Dep't/Bd. of Educ.,
 2015 U.S. Dist. LEXIS 131719 (E.D.N.Y. August 19, 2015) ............................................... 8-9

Dhar v. City of N.Y.,
 655 F App'x 864 (2d Cir 2016)................................................................................................10

Doyle v United Airlines, Inc.,
 914 F. Supp. 2d 325 (E.D.N.Y. 2012) .....................................................................................14

Lopez v. N.Y. City Dept. of Educ.,
 2020 U.S. Dist. LEXIS 133548 (S.D.N.Y July 28, 2020) ..................................................12, 14

Marcus v. Leviton Mfg. Co.,
 661 F. App'x 29 (2d Cir. 2016) ................................................................................................12

Mazzeo v. Mnuchin,
 751 F. App'x 13 (2d Cir. 2018)................................................................................................10

-ii-

McManamon v. Shinseki,
    2013 U.S. Dist. LEXIS 96087 (S.D.N.Y. July 9, 2013) ....................................................... 9, 11

Morey v. Windsong Radiology Group, P.C.,
    794 F. App'x 30 (2d Cir. 2019) ............................................................................................... 9

Nadel v. Shinseki,
    57 F. Supp 3d 288 (S.D.N.Y. 2014) ..................................................................................... 15

Washington v. N.Y. City Dept. of Educ.,
    740 F. App'x 730 (2d Cir 2018) ............................................................................................ 7

Woolf v. Strada,
    792 F. App'x 143 (2d Cir. 2020) ........................................................................................... 9

**PRELIMINARY STATEMENT**

Plaintiff, a teacher previously employed by the New York City Board of Education, "BOE" (doing business as the "New York City Department of Education"), asserts a claim of retaliation under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796 against Defendant BOE. Defendant now moves to dismiss Plaintiff's Fourth Amended Complaint (the "Complaint") on the basis that it fails to state a claim upon which relief can be granted.

Plaintiff's Rehabilitation Act retaliation claim must fail as Plaintiff is collaterally estopped from establishing that retaliation was the "but for" cause of his termination by the finding in his Education Law 3020-a proceeding that he had failed to compactly perform his duties and that this failure justified his termination. Additionally, Plaintiff fails to state a claim for retaliation because, he fails to allege any facts to plausibly support that he engaged in protected activity or causation between an adverse act and that protected activity. Initially, Plaintiff fails to plausibly allege that he engaged in protected activity by advocating for special needs students or otherwise complaining of discrimination. Rather, Plaintiff's allegations suggest his complaints related solely to his own ratings. Plaintiff's allegations establish that despite his weekly allegedly protected activity there was a three month gap between the earliest time he raised issues related to the assignment of co-teachers and his negative rating. As there are no other facts which support an inference of causation, this gap of time is too great for causation to be inferred based on temporal proximity.

Accordingly Defendants ask that the Complaint be dismissed in its entirety.

1

## STATEMENT OF FACTS[1]

Plaintiff was employed by the BOE as a teacher in 1995 and began working at the Bronx Guild High School ("BGHS") in 2005. See Fourth Amended Complaint Annexed to the Green Dec. as Exhibit "A", ECF Dkt. No. 70 at ¶ 9. Samuel Decker became Principal of BGHS in 2006 and remained the Principal until 2017. See id. at ¶ 10. Plaintiff received an effective rating in the 2013-2014 school year and only one unsatisfactory rating in previous school years. See id. at ¶ 11, 44. Plaintiff did not receive a performance rating in the 2014-2015 school year and returned from a leave of absence in the 2015-2016 school year. See id. at ¶¶ 12, 44. Upon his return from sabbatical Plaintiff was not assigned a dedicated classroom in the 2015-2016 and 2017-2018 school years. See id. at ¶ 37.

**Integrated Co-Teaching**

Plaintiff gained access in August 2015 to student Individualized Education Plans ("IEPs") and allegedly learned that some student's IEPs in his classes required Integrated Co-Teaching ("ICT"). See id. at ¶17. Plaintiff spoke with special education coordinator and assistant principal Stephanie Elliot regarding his belief that ICT was required at that time. See id. at ¶17. Plaintiff alleges that in some of his classes in Fall 2015 and the 2016-2017 school year over 40% of students had IEPs. See id. at ¶ 15. Plaintiff alleges one class he taught in November 20, 2015 had ten to twelve students with IEPs among twenty-two students. See id. at ¶¶ 15-16. Plaintiff alleges that seven of the nine classes in which he was observed in the 2016-2017 school year

---

[1] This statement of facts is derived from the allegations in Plaintiff's Fourth Amended Complaint, and the Exhibits annexed to the Declaration of Nicholas Green dated October 28, 2021 "Green Dec." Plaintiff's material factual allegations are assumed to be true for purposes of this motion to dismiss only.

2

should have used ICT but did not, and four had a greater than forty percent allocation of Special Education Students. See id. at ¶¶ 43, 48.

In August 2015 Plaintiff submitted a book draft in connection with his sabbatical entitled "Social Learning and Hegemony: Neoliberalism and Education Reform in the United States." See id. at ¶18. Plaintiff alleges that this book draft "indicated" students with IEPs requiring ICT were not being provided ICT. See id. Plaintiff continued to "raise the issue" of ICT teacher assignment and the allocation IEP students in classes in weekly team meetings during the fall 2015 semester and in the 2016-2017 school year. See id. at ¶19. Plaintiff alleges he also complained to school counselor Lorin Schneider, assistant principal Stephanie Elliot and five coworkers that he did not have a co-teacher during fall 2015 and the 2015-2016 school year. See id. at ¶¶ 20-21.

**Plaintiff's Observations and Interactions with Administration**

Plaintiff alleges that at an unspecified point he began receiving negative ratings for classroom observations in the 2015-2016 school year. See id. at ¶ 33. During this school year Plaintiff contends he did not have individual coaching sessions from November 2015 to May 2016, and that the principal failed to respond to his emails. See id. at ¶¶ 28-29. Plaintiff also alleges that the process for his ratings was different from other teachers in that he was initially told he would be required to undergo six observations rather than choose to only receive four observations, although he only ultimately received four observations. See id. at ¶¶ 35, 42. Plaintiff alleges that in order to have only four observations his May 1, 2016 observation was documented as a "formal" observation although it was conducted as an "informal" observation. See id. at ¶¶ 39-41. Plaintiff also contends that feedback for his November 20, 2015 was delayed until 90 days after the observation instead of the required 45 days. See Complaint at ¶ 27. Plaintiff received an

ineffective rating in the 2015-2016 school year, but alleges his Measure of Student Learning a component of his rating connected to student test scores were effective in the 2015-2016 and 2016-2017 school years. See id. at ¶ 44.

In the 2016-2017 school year, Plaintiff alleges he was again required to have six observations of his performance, and that he did not receive an initial planning conference. See id. at ¶ 44. Plaintiff alleges his teacher improvement plan was not finalized until September 26, 2016 but the deadline to finalize the plan was September 22, 2016. See id. at ¶ 46. Plaintiff contends that at some unspecified point he provided lesson plans but was told by supervisors he had not. See id. at ¶¶ 32.

Plaintiff alleges that principal Decker shouted at Plaintiff in coaching meetings, and "grunted" at Plaintiff in the hall. See id. at ¶ 49. Plaintiff alleges assistant principal Rauner did not greet him. See id. Plaintiff also alleges that in one instance where assistant principal Rauner was speaking to a student and Plaintiff interjected, assistant principal Rauner stated "I was not talking to you." See id. at ¶ 49. Plaintiff alleges in a coaching session assistant principal Rauner responded to Plaintiff's statement that he would be open to suggestions by stating "I don't think that you would." See id. at ¶ 49. Plaintiff alleges students told him they heard the principal "saying he wanted to get rid of" Plaintiff in an unspecified time and context. See id. at ¶ 31.

**Discipline and Article 75 Proceeding**

A verbal abuse claim was reported against Plaintiff by assistant principal Rauner in October 2017. See id. at ¶ 30. An Education Law § 3020-a proceeding was initiated against Plaintiff in May 26, 2017. See id. at ¶ 51; see also January 4, 2018 Opinion and Award, annexed to the Green Dec. as Exhibit "B." The charges and specifications for Plaintiff's Education Law § 3020-a proceedings included allegations that Plaintiff "failed to properly adequately, and or

4

effectively plan and/or execute separate lessons" and "to fully and/or consistently implement directives and/or recommendations for pedagogical improvement and professional development" and that these failures constituted "incompetent and/or inefficient service" and "just cause for termination." See Exhibit B at 2-3. A preliminary hearing was held on July 12, 2017, and the hearing took place on September 26, October 2, 6, 11, 19, 23 and 24; and November 1, 17, 28 and 29 in 2017 at the BOE's offices located at 100 Gold Street in New York City. See Exhibit B at 2. During that time Plaintiff had the opportunity to cross-examine witnesses and present evidence and arguments in his defense. See Exhibit B at 2. In a July 4, 2018 Opinion and Award the hearing officer sustained specifications that Plaintiff "failed to properly adequately, and or effectively plan and/or execute separate lessons" at least in part during nine separate observations and also failed to "to fully and/or consistently implement directives and/or recommendations for pedagogical improvement and professional development." See Exhibit B at 69. The hearing officer further found "there is Just Cause for termination, and termination is the appropriate penalty in this case." See Exhibit B. at 69. Plaintiff was terminated on January 29, 2018. See Exhibit A at 51.

Plaintiff commenced an Article 75 proceeding challenging the determination of Hearing Officer Barron on January 12, 2018, and an order was entered by the New York State Supreme Court finding that there was adequate evidence in the record and a rational basis for the Hearing Officer's determination, but finding Plaintiff's termination "shocking to the conscience" and remanding for a lesser penalty on January 4, 2019. See Matter of Ford v Bd. of Educ. of the City Sch. Dist. of the City of NY, 2019 NY Slip Op 50009[U], *1 (Sup. Ct., N.Y. County 2019)(reversed at Matter of Ford v. Bd. of Educ. of the City Sch. Dist. of the City of NY, 188 A.D.3d 415, 415 (1st Dep't 2020). The First Department reversed the decision of the Supreme

5

Court on November 5, 2020 and upheld Plaintiff's Termination as not "shocking to the conscience." See November 5, 2020 First Department Decision, annexed hereto as Exhibit "C."

Plaintiff commenced this action on July 5, 2019. See July 5, 2019 Complaint, annexed as Exhibit "D" to the April 20, 2021 Declaration of Nicholas Green ("Green Dec.").

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citation omitted). Further, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678. Thus, a plaintiff must plead facts sufficient to demonstrate "more than a sheer possibility that a defendant has acted unlawfully . . . [and] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,'" and must, therefore, be dismissed. Id.; see also Twombly, 550 U.S. at 557, 570 (stating that because the complaint had not nudged Plaintiff's claims "across the line from conceivable to plausible," the complaint must be dismissed).

## ARGUMENT

### POINT I

**PLAINTIFF'S SOLE CLAIM IS BARRED BY COLLATERAL ESTOPPEL**

"The doctrine of collateral estoppel bars re-litigation of a legal or factual issue that was previously decided where: '(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." See Washington v. N.Y. City Dept. of Educ., 740 F. App'x 730, 732 (2d Cir 2018).  A New York Education Law "Section 3020-a hearing is a quasi-judicial administrative action whose findings are entitled to preclusive effect." See id. (citing Burkybile v. Bd. of Educ., 411 F.3d 306, 308, 311-12 (2d Cir. 2005), cert. den. 546 U.S. 1062 (2005)).

Here, Plaintiff seeks to challenge his termination, but whether Plaintiff's performance justified his termination was already at issue in the disciplinary hearing held pursuant to § 3020-a of the New York Education Law, which immediately preceded and indeed resulted in his termination.  See Complaint at ¶ 51.  Following his Education Law § 3020-a proceeding, a hearing officer determined certain factual issues, such as Plaintiff's demonstrated failure to adequately plan and execute lessons, and his inability to follow directives for pedagogical improvement..  See Exhibit B at 69.  Further, the hearing officer found that these failures justified his termination and sustained charges of incompetence against Plaintiff.  See Exhibit B at 69.  Therefore, Plaintiff litigated, and the hearing officer at Plaintiff's Education Law 3020-a § proceeding decided, the factual issues relevant to the question of whether Plaintiff's performance warranted his termination.  Plaintiff had a full and fair opportunity to litigate the matter across his multi-day hearing, including the opportunity to present evidence and cross examine BOE witnesses.  See Exhibit B at 2.  Further, the result of the hearing and penalty were appealed by Plaintiff in an C.P.L.R. Article 75 proceeding and subsequently upheld by the Appellate Division,

First Department. See Exhibit C. The First Department held "[w]e do not find the penalty of termination of petitioner's employment as a teacher shocking to one's sense of fairness…given the evidence of petitioner's pedagogical shortcomings, documented by supervisors and a peer evaluator, and his lack of improvement during two school years." See Exhibit C at 1 (internal citations omitted).

Because Plaintiff's termination occurred as a result of an Education Law 3020-a § proceeding which upheld charges of incompetence, he is collaterally estopped from proving that retaliation was the "but for" cause of his termination. See Garcia v. Yonkers Bd. of Educ., 803 F. App'x 441, 444 (2d Cir. 2020)("…the hearing officer found, after a full hearing, that the reasons were valid. Accordingly, Garcia was precluded from denying the conduct that was the basis for her termination."); see also Smith v. N.Y. City Dept. of Educ., 808 F. Supp 2d 569, 580, 582 (S.D.N.Y. 2011)("in finding Smith guilty of misconduct, time and attendance abuse, insubordination, and neglect of duty, among other things, the hearing officers addressed the same factual issues that are raised herein. In other words, in both contexts, it becomes necessary to resolve whether Smith was subjected to adverse employment actions because of his own conduct or because of other factors, such as impermissible discrimination by defendant."); Davis v. N.Y. City Dep't/Bd. of Educ., No. 14 Civ. 2281(KAM)(LB), 2015 U.S. Dist. LEXIS 131719, *11 (E.D.N.Y. August 19, 2015)(adopted at Davis v. N.Y. City Dep't./Bd. of Educ., No. 14 Civ. 2281(KAM)(LB), 2015 U.S. Dist. LEXIS 131466, at *6 (E.D.N.Y. Sep. 29, 2015))(dismissing retaliation claims on the grounds plaintiff could not prove retaliation was the "but for" cause of discipline where a 3020-a proceeding and subsequent Article 78 proceeding had determined Plaintiff's incompetence warranted discipline).

Just as in <u>David</u> and <u>Garcia</u> in order to demonstrate that retaliation was the "but for" cause of his discipline, Plaintiff would have to contest the charges against him which have already been adjudicated in an Education Law § 3020-a proceeding, and affirmed by the First Department. <u>See id</u>. The hearing officer at the 3020-a proceeding already determined there was a legitimate, non-retaliatory reason for Plaintiff's discipline, and Plaintiff is barred from challenging that determination. Plaintiff has already appealed the results of the hearing in an Article 75 proceeding and his discipline was ultimately affirmed by the First Department. <u>See</u> Exhibit C. As a result he is collaterally estopped from re-litigating again the validity of his termination here, and his claims of retaliation with respect to his termination must be dismissed. <u>See</u> <u>Davis, U.S. Dist</u>. LEXIS 131466, at *6.

## POINT II

### PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION UNDER THE REHABILITATION ACT

**A.    Applicable Standard**

To establish a *prima facie* case of retaliation under the Rehabilitation Act, for which the standard is largely similar to the ADA, Plaintiff must show that: (1) he engaged in a protected activity, (2) his employer was aware of the activity, (3) the employer took an adverse employment action against him, and (4) a causal connection exists between the protected activity and the adverse employment action. See <u>Woolf v. Strada</u>, 792 F. App'x 143, 145 (2d Cir. 2020); <u>see also</u> <u>Morey v. Windsong Radiology Group, P.C.</u>, 794 F. App'x 30, 33 (2d Cir. 2019). To constitute protected activity "a complaint must be 'sufficiently pointed to be reasonably understood as a complaint of discrimination' and the plaintiff must 'possess a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" See <u>McManamon v. Shinseki</u>, No. 11-cv-7610 (PAE), 2013 U.S. Dist. LEXIS 96087, at *29 (S.D.N.Y. July 9, 2013)(citations

9

omitted). However, Rehabilitation Act claims differ from ADA claims in that the Rehabilitation Act only applies to federally-funded programs. See Bryant v. N.Y. Educ. Dep't, 692 F.3d 202, 216 (2d Cir. 2012).

"To plausibly allege a materially adverse employment action, a plaintiff must allege that his employer's conduct resulted in a harm that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" See Mazzeo v. Mnuchin, 751 F. App'x 13, 16 (2d Cir. 2018) (quoting Burlington N. & Santa Fe Ry., 548 U.S. at 56 (2006)). While a causal connection may be demonstrated through temporal proximity, the temporal proximity must be "very close." See Dhar v. City of N.Y., 655 F App'x 864, 865-866 (2d Cir 2016)(citations omitted). Plaintiff alleges that he advocated for the assignment of co-teachers for special education students and complained regarding the ratio of special education students in classrooms and was retaliated against as a result. For the following reasons Plaintiff's Rehabilitation Act retaliation claims must be dismissed.

**B.      Plaintiff Fails to Allege that Defendants were Aware of Any Protected Activity**

Here, Plaintiff argues that prior to his termination he engaged in protected activity by (1) "raising the issue" with special education coordinator and Stephanie Elliot in August 2015 regarding his belief that ICT was required for his students, (2) submitting a book draft which "indicated" students were not being provided collaborative team teaching, (3) complaining to a school counselor and five coworkers that he was not assigned a co-teacher during fall 2015 and the 2015-2016 school year (4) "raised the issue" in weekly meetings in the fall of 2015 and 2016-2017 school year regarding his beliefs that students with IEPs were not provided ICT and too high a ratio of students with IEPs were assigned to his classes (5) sending an email to his union representative in which he alleged he did not have a co-teacher and that one of his classes had a ratio of over half students with IEPs (6) filing an appeal of his performance rating in which he

stated he did not have a co-teacher on November 22, 2017 and (7) stating to DOE counsel Jennifer Hogan that some of his classes had a greater than forty percent ratio of IEP students. See Complaint at ¶¶ 17-26.

Initially, it is unclear that Plaintiff's decision to merely "raise the issue" of potentially required ICT or ratio of IEP students within his classes is sufficient to constitute a complaint of discrimination. Plaintiff's mere discussion of these issues with others does not amount to a statement "sufficiently pointed to be reasonably understood as a complaint of discrimination." See McManamon, 2013 U.S. Dist. LEXIS 96087, at *29. It is not clear from these allegations whether Plaintiff in interacting with the school counselor, Stephanie Elliot, or in weekly meetings merely asked questions or instead expressed a specific complaint. Likewise, Plaintiff's book on "Social Learning and Hegemony: Neoliberalism and Education Reform in the United States" does not appear to raise a specific complaint related to advocacy for special needs students by his vague allegations that the work "was critical" of Defendants or "indicated" students were not receiving collaborative team teaching.

Additionally, even in those instances where Plaintiff states that he complained regarding the issue, it is not clear whether his statements were framed as merely a staffing concern or a concern regarding the provision of benefits to disabled students. Indeed, the Plaintiff's complaint which is reiterated throughout his Education Law 3020-a hearing was not that students were deprived of a co-teacher in the school, but that Plaintiff was unfairly rated in his classes as a result of not having a co-teacher and having too great a ratio of IEP students. See Exhibit B at 49. This is the same complaint Plaintiff alleges he raised in the appeal of his performance rating. Plaintiff's complaints regarding allegedly unfair circumstances under which he was being rated could not reasonably be understood as advocating for special education students, or otherwise

complaining of discrimination.  Therefore Plaintiff fails to plausibly allege he engaged in protected activity known to Defendants.  See Lopez v. N.Y. City Dept. of Educ., No. 17-CV-9205 (RA), 2020 U.S. Dist. LEXIS 133548, at *36-37 (S.D.N.Y July 28, 2020) (dismissing ADA and Rehabilitation Act claims where Plaintiff's allegations did not support Defendants' knowledge of Plaintiff's Complaints).

**C.     Plaintiff Fails to Allege a Plausible Causal Connection**

Even assuming, *arguendo*, these acts constitute protected activity, Plaintiff fails to plead a plausible causal connection between any protected activity and an adverse action.  Plaintiff alleges he experienced an adverse action in that he received a negative rating on November 20, 2016, presumably in retaliation for his August 2015 conversation with Stephanie Elliot or August 2015 publication of a book "indicating" students were not being provided ICT.  See Complaint at ¶¶ 17-18.  However, the three month gap between these August 2015 complaints and Plaintiff's November 2015 rating does not establish a close enough temporal proximity under these circumstances to support an inference of causation.  See Bodenmiller v. County of Suffolk, No. 20-CV-0414 (JMA) (ARL), 2021 U.S. Dist. LEXIS 165458, at *30 (E.D.N.Y. Aug. 30, 2021)("No temporal proximity exists because the filing of the third complaint was filed three months prior to the allegedly adverse employment action"); see also Gentile v. Potter, 509 F Supp 2d 221, 239 (E.D.N.Y. 2007)(finding four months too long a time to find causation and noting "Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and alleged act of retaliation.")  The gap of time between Plaintiff's August complaints and his first negative rating must be at least three months, which is too great a gap of time given that there are no other circumstances that would suggest an inference of retaliation.  Plaintiff alleges that he began receiving negative ratings in observations in the 2015-2016 school year, but the first specific observation that Plaintiff complains of is his November 20, 2015 observation.

See Complaint at ¶ 27. Plaintiff could not have plausibly received negative evaluations prior to this time, as in earlier iterations of the Complaint Plaintiff specifically contended that he received positive feedback in observations during September and October of 2015. See Plaintiff's Third Amended Complaint, annexed to the Declaration of Nicholas Green as Exhibit "E" at ¶ 52. As a result there is too great a gap of time to infer causation between Plaintiff's August 2015 book and conversation with Stephanie Elliot and his November 2015 rating.

Although Plaintiff alleges that he continued to complain regarding the assignment of a co-teacher to his classroom on at least a weekly basis from August 2015 into 2017 both in meetings, to coworkers assistant principal Stephanie Elliot, given these alleged constant complaints it is simply not plausible that Defendants would have waited months, or years, to take some retaliatory action. See Birch v. City of New York, 184 F. Supp. 3d 21, 32 (E.D.N.Y. 2016) ("Retaliatory intent does not sit patiently like a spider in a web hoping that prey will wander in; the daily employment relationship provides for constant opportunities and temptations to retaliate for protected activity if an employer is of a mind to do so.") Plaintiff pleads that following his first negative November 2015 rating he continued to receive negative ratings in the 2015-2016 and 2016-2017 school year. See Exhibit A at 44. Plaintiff alleges he experienced a range of procedural inconsistencies in how he was observed and rated, including delays in the provision of feedback following an observation, a lack of responses to emails, a lack of choice regarding the type and number of his observations, a lack of coaching sessions between November 2015 and May 2016, an informal observation being recorded as a formal observation, a lack of an initial planning conference, and a four day delay in the provision of a teacher improvement plan ("TIP"). See Exhibit A at 27-29, 35, 40-41, 45-46. Plaintiff also alleges he was not assigned a dedicated classroom. See Exhibit A at 36. Plaintiff complains regarding interactions with the principal and

assistant principal, alleging that there "[t]here were instances of yelling," and the principal grunted at Plaintiff and the assistant principal did not acknowledge him in the hall.  See Exhibit A at 49.  Plaintiff also alleges that the assistant principal made two statements disregarding or discrediting Plaintiff's statement.  See Exhibit A at 49.  Plaintiff also alleges that assistant principal Rauner filed a "false" verbal abuse claim in October 2017 against Plaintiff.  See Exhibit A at 30.  Finally Plaintiff alleges he was terminated on January 29, 2018.  See Exhibit A at 51.

In terms of timing it is unclear exactly when many of these alleged incidents occurred.  However, the three year statute of limitations applicable to Plaintiff's Rehabilitation Act claim limits what claims are actionable.  See Doyle v United Airlines, Inc., 914 F. Supp. 2d 325, 334 (E.D.N.Y. 2012); see also Lopez v. N.Y. City Dept. of Educ., No. 17-CV-9205 (RA), 2020 U.S. Dist. LEXIS 133548, at *14 (S.D.N.Y July 28, 2020).  As Plaintiff commenced this action on July 5, 2019, the statute of limitations would only extend to July 5, 2016.  See Exhibit D.  The only allegations which appear to occur after this time are Plaintiff's negative ratings in the 2016-2017 school year, the failure to provide an initial planning conference and delay in providing a TIP, the report of Plaintiff's verbal abuse in October 2017 and Plaintiff's termination on January 29, 2018.  See Exhibit A at 30, 43, 45-46, 51.  All of Plaintiff's remaining complaints are untimely.

Plaintiff's allegations establish that he began discussing both the IEP ratios and ICT issues in meetings with coworkers and assistant principal Stephanie Elliot on a weekly basis in November 2015 and continuing into the 2016-2017 school year.  See Exhibit A at 17-21.  Plaintiff's allegations establish that he had been discussing the assignment of ICT and ratio of students with IEPs in classes consistently for at least ten months prior to the time the statute of limitations begins.  This undercuts any inference that his discussions, even were the Court to find

14

they constituted protected activity in the form of advocacy for special education students, would have suddenly inspired retaliation.

Additionally, Plaintiff fails to allege any other facts supporting an inference of retaliatory intent. Although Plaintiff alleges that the principal and assistant principal Rauner were not friendly towards Plaintiff, none of Plaintiff's allegations reveal any attitude towards Plaintiff's complaints regarding ICT or assignment of students with IEPs. See Complaint at ¶ 49. Plaintiff alleges that his students told Plaintiff they heard the principal "saying he wanted to get rid of Plaintiff" but this hearsay is ungrounded in any context that would suggest the principal's attitude towards Plaintiff was in any way connected to protected activity. See id. at ¶ 31. As Plaintiff alleges no statements by the principal or assistant principal indicating retaliatory intent, or other circumstances from which an inference of causation could be inferred his Rehabilitation Act claims must be dismissed. See Nadel v. Shinseki, 57 F. Supp 3d 288, 299 (S.D.N.Y. 2014).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the Fourth Amended Complaint, together with such other and further relief as the Court deems just and proper.

Dated:    New York, New York
              October 28, 2021

**GEORGIA M. PESTANA**
Corporation Counsel of the
   City of New York
Attorney for Defendants
100 Church Street, Room 2-176
New York, New York 10007
(212) 356-2445
nigreen@law.nyc.gov

By:    /s/ *Nicholas Green*
          Nicholas Green
          Assistant Corporation Counsel

Joseph Anci,
Nicholas Green,
   Of Counsel.