UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                           :

BRIAN FORD,                                  :

                           :
                Plaintiff,           :

                           :        19 Civ. 6327 (JPC) (KHP)
        -v-                    :

                           :        <u>OPINION AND ORDER</u>
THE NEW YORK CITY BOARD OF EDUCATION    :
a/k/a the Department of Education,      :

                           :
                Defendant.        :

                           :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Brian Ford, a former social studies teacher at The Bronx Guild High School, brings this action against Defendant The New York City Board of Education, a/k/a the Department of Education, for retaliation under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Plaintiff principally alleges that Defendant violated section 504 by commencing disciplinary proceedings against him under New York Education Law section 3020-a and eventually terminating his employment, as retaliation for his advocacy on behalf of special education students at the school. Defendant has moved to dismiss the Fourth Amended Complaint on collateral estoppel grounds and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion to dismiss is denied.

## I.    Background

### A. Factual Allegations

      The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Fourth Amended Complaint and from the documents attached thereto and incorporated therein by reference. Dkt. 70 ("Fourth Am. Compl."); *see Chambers v. Time Warner,*

*Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (noting that at the motion to dismiss stage, a court may consider "'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference'" as well as any documents "integral" to the complaint, *i.e.*, "where the complaint 'relies heavily upon [the document's] terms and effect'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam))).

Plaintiff was employed by Defendant as a social studies teacher starting in 1995. Fourth Am. Compl. ¶ 9. From 2005 until his termination on January 29, 2018, Plaintiff worked at The Bronx Guild High School. *Id.* Plaintiff received an "Effective" annual rating for the 2013-2014 school year, and he received the highest rating in all but one of the years during his tenure as a teacher in Defendant's schools. *Id.* ¶ 11. After taking a leave of absence, Plaintiff returned to teach for the 2015-2016 school year. *Id.* ¶ 12. His roster included students who had Individual Education Programs ("IEPs") that required a special education teacher to co-teach the class, known as Integrated Co-Teaching ("ICT"). *Id.* ¶ 15. According to Plaintiff, special education laws require that a co-teacher be assigned where a student's IEP calls for ICT services "in all four core subject areas (English, Math, Social Studies, Science)" and permits up to forty percent of IEP students in an ICT classroom. *Id.* ¶¶ 15-16.

### 1. Protected Activity

Plaintiff contends that he engaged in multiple instances of protected activity advocating for special education students during the 2015-2016 and 2016-2017 school years. For the 2015-2016 school year, Plaintiff contends that he was not provided with the IEPs for the special education students on his roster until sometime in or around October 2015,[1] at which time "he raised the

---

[1] Plaintiff also contends that sometime in August 2015, he submitted "to Superintendent Staple as well as Principal Decker" a draft of his book that he wrote to fulfill his sabbatical

issue with the Special Education Coordinator and [Assistant Principal] Stephanie Eliot . . . that the IEPs mandated both [a] general education and [a] special education teacher to be in the classroom." *Id.* ¶ 17.  Plaintiff also raised not having a special education co-teacher during the 2015 fall semester and 2016-2017 school year during weekly team meetings, *id.* ¶ 19, with the school counselor, *id.* ¶ 20, and with other teachers at the school, *id.* ¶ 21.

On December 9, 2016, Plaintiff contacted his union representative at the United Federation of Teachers about not having a co-teacher and "about his class in which over half the students on his roster were special education students slated for ICT, yet Plaintiff was teaching the students alone." *Id.* ¶¶ 23-24.  "Upon information and belief," the union representative "brought Plaintiff's concerns to the Principal." *Id.* ¶ 23.  On December 23, 2016, Plaintiff filed an Annual Professional Performance Review ("APPR") complaint that complained about him not having a co-teacher, which was sent directly to the Principal.  *Id.* ¶ 25.  Furthermore, on November 22, 2017, Plaintiff told an attorney for the Department of Education, Jennifer Hogan, that "many of the classes exceeded forty percent IEP students and had no co-teachers." *Id.* ¶ 26.

### 2.  Retaliatory Conduct

Plaintiff alleges that he faced retaliation by school administrators as a direct result of his advocacy on behalf of special education students.  Starting in November 2015, Plaintiff alleges that he "ceased having individual coaching sessions" and that, during an observation conducted by Principal Decker on November 20, 2015, the Principal failed to provide him with timely feedback

requirement, called *Social Learning and Hegemony: Neoliberalism and Education Reform in the United States*.  Fourth Am. Compl. ¶ 18.  Plaintiff claims that he submitted this book, "which indicated that students with Special Ed designation that called for Collaborative Team Teaching . . . were not being taught in a Co-Teaching environment," to complain that Defendant was violating the rights of students at the school under the Americans with Disabilities Act and the Rehabilitation Act.  *Id.*

within forty-five days and, instead, waited almost four months to provide the feedback despite finishing the evaluation report within ninety minutes of leaving Plaintiff's class. *Id.* ¶¶ 27-28. Plaintiff also began receiving negative observations during the 2015-2016 school year and was not provided with any options as to the type and number of observations. *Id.* ¶¶ 33-34, 41-42, 45. The parties' collective bargaining agreement provided that a teacher is allowed to select his or her observation option. *Id.* ¶ 35. Notwithstanding Plaintiff's choice of four observations, he was told by Principal Decker that he "needed to have six observations." *Id.*

Moreover, Plaintiff alleges that he "was the only core subject teacher who did not have a dedicated classroom and traveled from class to class using a cart." *Id.* ¶ 36. Likewise, during the 2015-2016 school year, Plaintiff "did not have a dedicated work area for the first six to eight weeks of [s]chool and had to ask other teachers on their prep period if he could work in their rooms." *Id.* ¶ 37. Plaintiff also alleges a myriad of other instances of purported retaliation by Defendant, including that:

- "Plaintiff's emails to the Principal went unanswered except for one email," *id.* ¶ 29, and "the Principal was overheard [by students] saying he wanted to get rid of [Plaintiff]," *id.* ¶ 31;

- Assistant Principal "Rauner filed a false verbal abuse claim in October of 2017 against Plaintiff," *id.* ¶ 30;

- Defendant falsely claimed that Plaintiff did not hand in lesson plans, *id.* ¶ 32;

- "There were instances of yelling, including in coaching meetings," Principal "Decker only grunted when passing [Plaintiff] in the hall," and Assistant Principal "Rauner refused to greet Plaintiff in the hall" and "was unvaryingly disdainful towards Plaintiff," *id.* ¶ 49.

### 3.    Section 3020-a Proceeding

On or about May 26, 2017, Defendant commenced disciplinary proceedings against Plaintiff pursuant to New York Education Law section 3020-a,[2] charging him for conduct that occurred during the 2015-16 and 2016-2017 school years. *Id.* ¶ 51; Dkt. 74-2 ("Green Declaration"), Exh. B ("Section 3020-a Opinion"). Specifically, Defendant charged that:

- "During the 2015-2016 and 2016-2017 school years, [Plaintiff] failed to properly, adequately, and/or effectively plan and/or execute separate lessons . . . ."

- "[Plaintiff] failed, during the 2015-2016 and/or 2016-2017 school years, to fully and/or consistently implement directives and/or recommendations for pedagogical improvement and professional development provided in observation conferences with administrators and/or outside observers; instructional meetings; teacher improvement plans; one-on-one meetings with administrators, school based coaches, and/or outside observers; as well as schoolwide professional development . . . ."

Section 3020-a Opinion at 2-3. Based on these charges, Defendant sought a finding of "[j]ust cause for disciplinary action under Education Law § 3020-a," "[s]ubstantial cause rendering [Plaintiff] unfit to properly per form [*sic*] obligations to the service," and "[j]ust cause for termination," among other findings. *Id.* at 3. Plaintiff contends that Defendant's commencement of the section 3020-a proceeding against him varied from Defendant's normal practice of commencing such proceedings to terminate a tenured teacher after "*[t]wo Ineffective consecutive annual ratings.*" Fourth Am. Compl. ¶ 43 (emphasis added). According to Plaintiff, he "had an Effective rating in 2013-14, no rating in 2014-15 because he took a sabbatical, and a Developing rating in 2016-17. For 2015-16, the only Ineffective rating had an insufficient number of

---

[2] Section 3020-a "lays out extensive hearing and appeal procedures for disciplining tenured teachers and administrators in the New York state school system." *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 309 (2d Cir. 2005). A section 3020-a hearing is held before a hearing officer selected from a list of labor arbitrators provided by the American Arbitration Association, N.Y. Educ. Law § 3020-a(3), who adjudicates charges against a Department of Education employee, *Burkybile*, 411 F.3d at 311.

observations and . . . under the 2016-17 calculation matrix would have also been a Developing [r]ating." *Id.* ¶ 44.  Plaintiff also contends that Defendant's "subjective observations," which "are easily manipulated," conflicted with his ratings for the "Measure of Student Learning" based on improvement in students' test scores, which were "effective" for both the 2015-2016 and 2016-2017 school years. *Id.* ¶ 42.

The section 3020-a proceeding entailed eleven days of evidentiary hearings, during which the parties had an opportunity to present evidence, examine and cross-examine witnesses, and make arguments in support of their respective positions.  Section 3020-a Opinion at 2.  On January 4, 2018, the hearing officer issued a written opinion and award, sustaining Defendant's charges with certain exceptions, and finding that Plaintiff "was not an effective teacher, and that there is just cause for disciplinary action under Education Law § 3020-a." *Id.* at 66.  In particular, the hearing officer found that Plaintiff "provided incompetent and inefficient service; engaged in conduct unbecoming his position; engaged in conduct prejudicial to the good order, efficiency, and discipline of the service; and neglected his duty." *Id.*  The hearing officer also found that Plaintiff "was given ample support and feedback, and the feedback he received was clear and consistent"; received support "from multiple sources," which "was provided in multiple ways, including weekly school wide meetings, team coaching, individual coaching, pairing with other teachers and lesson modeling"; and "was given a fair opportunity to improve." *Id.* at 66-67.  Nevertheless, he "failed to make changes." *Id.* at 66.  Based on these findings, the hearing officer concluded that "there is Just Cause for termination, and termination is the appropriate penalty in this case." *Id.* at 69.

On January 29, 2018, Defendant terminated Plaintiff.  Fourth Am. Compl. ¶ 51.  Shortly thereafter, Plaintiff challenged the hearing officer's decision in New York Supreme Court, New

York County, under Article 75 of the New York Civil Practice Law and Rules.  Green Declaration, Exh. C ("First Department Opinion") at 1.  On January 17, 2017, the New York Supreme Court "vacat[ed] the penalty portion" of the hearing officer's award and "remand[ed] the matter . . . for the imposition of a lesser penalty."  *Id.*  Defendant appealed the decision by the New York Supreme Court.  *Id.*  On November 5, 2020, the Appellate Division for the First Judicial Department (the "First Department") reversed the lower court's decision and reinstated Plaintiff's termination of employment, finding that "the penalty of termination of [Plaintiff]'s employment as a teacher [was not] shocking to one's sense of fairness, given the evidence of [Plaintiff]'s pedagogical shortcomings, documented by supervisors and peer evaluators, and his lack of improvement during two school years."  *Id.* (citation omitted).

**B.  Procedural History**

Originally proceeding *pro se*, Plaintiff commenced this action on July 5, 2019.  Dkt. 2. Plaintiff subsequently amended his Complaint several times by filing the Amended Complaint, Dkt. 11, the Second Amended Complaint, Dkt. 38, and the Third Amended Complaint, Dkt. 44. On September 29, 2020, this matter was reassigned to the undersigned.  Counsel appeared on behalf of Plaintiff on July 20, 2021.  Dkt. 63.  On August 31, 2021, Plaintiff filed the Fourth Amended Complaint, the operative complaint in this action.  On October 28, 2021, Defendant moved to dismiss the Fourth Amended Complaint, arguing that Plaintiff is collaterally estopped from establishing that retaliation was the "but for" cause of his termination due to the hearing officer's finding in Plaintiff's section 3020-a proceeding that he was not an effective teacher and that there was just cause for his termination.  Dkt. 74-1 ("Motion") at 6-9.  Defendant further questions whether Plaintiff sufficiently alleged that he engaged in protective activity and, if so, argues that Plaintiff has failed to state a claim of retaliation because he has not alleged facts

sufficient to show that Defendant was aware of his engagement in that protected activity or that the activity caused the adverse employment actions taken by Defendant. *Id.* at 9-15.  Plaintiff filed an opposition to Defendant's motion to dismiss on December 14, 2021, Dkt. 78 ("Opposition"), and Plaintiff filed a reply on December 28, 2021, Dkt. 79.

## II.      Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In making this determination, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), but it need not "accept as true legal conclusions couched as factual allegations," *Lafaro v. N.Y. Cardiothoracic Grp. PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III.     Discussion

### A.  Collateral Estoppel

"The doctrine of collateral estoppel precludes a party from relitigating an issue that the party previously litigated and lost." *Denicolo v. Bd. of Educ. of City of New York*, 328 F. Supp. 3d 204, 211 (S.D.N.Y. 2018).  Under New York law,[3] collateral estoppel precludes a party from

---

[3] New York's collateral estoppel rule applies because Plaintiff's prior proceedings for his termination from employment with Defendant occurred in New York. *See LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) ("A federal court must apply the collateral estoppel rules of the state that rendered a prior judgment on the same issues currently before the court, which in this case is New York.").

relitigating an issue in a subsequent action or proceeding when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006); *see also LaFleur*, 300 F.3d at 271 ("[C]ollateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party whether or not the tribunals or causes of action are the same." (quotations and alteration omitted)). A section 3020-a hearing is a "quasi-judicial" proceeding and may be preclusive if the criteria of collateral estoppel are met. *Burkybile*, 411 F.3d at 311-14. "Whether a § 3020-a determination has preclusive effect depends on the precise issue determined as compared to the issue in the subsequent litigation." *Denicolo*, 328 F. Supp. 3d at 211.

Defendant argues that Plaintiff is collaterally estopped from litigating his retaliation claim under the Rehabilitation Act because "whether Plaintiff's performance justified his termination was already at issue in the disciplinary hearing held pursuant to § 3020-a of the New York Education Law, which immediately preceded and indeed resulted in his termination." Motion at 7. Specifically, Defendant argues that during the section 3020-a proceeding, Plaintiff had a "full and fair opportunity" to litigate "the factual issues relevant to the question of whether Plaintiff's performance warranted his termination." *Id.* At the conclusion of the proceeding, the hearing officer determined certain factual issues, including that "Plaintiff's demonstrated failure to adequately plan and execute lessons, and his inability to follow directives for pedagogical improvement . . . justified his termination and sustained charges of incompetence against Plaintiff." *Id.* Furthermore, Plaintiff appealed the outcome of the section 3020-a proceeding against him, with the First Department ultimately affirming. First Department Opinion at 1 ("We do not find

the penalty of termination of petitioner's employment as a teacher shocking to one's sense of fairness, given the evidence of petitioner's pedagogical shortcomings, documented by supervisors and a peer evaluator, and his lack of improvement during two school years." (citation omitted)). Thus, Defendant argues, Plaintiff "is collaterally estopped from proving that retaliation was the 'but for' cause of his termination."  Motion at 8.

While it is true that the hearing officer found that there was "just cause" for Plaintiff's termination, "[t]here is no indication that the Section 3020-a hearing addressed, much less 'actually decided,' whether the charges leading to [Plaintiff]'s termination were driven, even in part, by . . . retaliatory intent." *Leon v. New York City Dep't Educ.*, 612 F. App'x 632, 634-35 (2d Cir. 2015). In fact, there is no mention of the word "retaliation" anywhere in the hearing officer's written decision nor does Defendant contend that Plaintiff expressly raised retaliation or that the hearing officer made any findings as to any retaliation or retaliatory intent by Defendant.[4]  *See Denicolo*, 328 F. Supp. 3d at 211-12 (holding that collateral estoppel did not bar the plaintiff's retaliation claim because, although "the hearing officer did decide . . . that the plaintiff acted improperly," "that she had committed misconduct," and "that her actions warranted termination," "the hearing officer did not decide whether the plaintiff was subjected to retaliatory actions by the defendants" and "[t]here is no indication that the hearing officer addressed, much less decided, whether the

---

[4] The closest the hearing officer's opinion came to addressing discriminatory motive by Defendant was in rejecting Plaintiff's argument that "the administrators failed to support him and were biased against him."  Section 3020-a Opinion at 63.  But the mere mention of bias, without more, is insufficient to find that Plaintiff had a "full and fair opportunity" to litigate whether Defendant retaliated against Plaintiff under the Rehabilitation Act.  *See Washington v. New York City Dep't of Educ.*, No. 16 Civ. 9588 (ER), 2017 WL 4687982, at *8 (S.D.N.Y. Oct. 16, 2017) (holding that although the discrimination claim raised in the section 3020-a hearing was preclusive of the issue in federal court, the retaliation claim was not because the hearing officer only referred to "retaliation" once in the opinion and never "explicitly addressed or ruled on the merits of any retaliation argument"), *aff'd*, 740 F. App'x 730 (2d Cir. 2018).

charges leading to the plaintiff's termination were driven, even in part, by retaliatory intent"); *Wein v. New York City Dep't of Educ.*, No. 18 Civ. 11141 (PAE), 2020 WL 4903997, at *10-11 (S.D.N.Y. Aug. 19, 2020) (holding that collateral estoppel did not apply because the plaintiff's Article 78 petition "did not put at issue age or disability discrimination in that proceeding" and "the petition d[id] not contain any reference to discrimination"); *Washington*, 2017 WL 4687982, at *8 (holding that the plaintiff's retaliation claims were not barred by collateral estoppel because the section 3020-a hearing officer "never explicitly addressed or ruled on the merits of any retaliation argument").

Thus, a finding by the hearing officer that Plaintiff "was not an effective teacher, and that there is just cause for disciplinary action under Education Law § 3020-a" because Plaintiff "provided incompetent and inefficient service; engaged in conduct unbecoming of his position; engaged in conduct prejudicial to the good order, efficiency, and discipline of the service; and neglected his duty," Section 3020-a Opinion at 66, does not necessarily "preclude a jury from later finding that the plaintiff was also terminated at least in part because of [retaliatory] reasons," *Leon*, 612 F. App'x at 635 (alterations omitted). In other words, Plaintiff "could be successful on the . . . retaliation claim[] even if the jury were to accept that there were legitimate reasons for terminating h[im] too." *Id.* (alterations omitted); *see id.* ("The court's error . . . stems from the faulty assumption that termination for cause *necessarily* precludes the possibility of termination motivated by unlawful animus."); *Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020) ("But-for causation does not require a showing that retaliation was an employer's sole motive, only that the adverse action would not have occurred in the absence of the retaliatory

motive." (quotations omitted)).  For these reasons, the Court concludes that Plaintiff's retaliation

claim is not barred by collateral estoppel.[5]

## B.  Rehabilitation Act

Section 504 of the Rehabilitation Act prohibits "any program or activity receiving Federal

financial assistance" from discriminating against an employee "solely by reason of her or his

disability."  29 U.S.C. § 794(a).  "Like many other federal anti-discrimination provisions, the

Rehabilitation Act also prohibits retaliation against a person for opposing any practice made

unlawful by the Act."  *Dodd*, 489 F. Supp. 3d at 245; *see also Payson v. Bd. of Educ. of Mount*

*Pleasant Cottage Sch., USFD*, No. 14 Civ. 9696 (JCM), 2017 WL 4221455, at *21 (S.D.N.Y.

---

[5] The cases on which Defendant relies in its Motion support the same outcome.  In *Garcia v. Yonkers Board of Education*, 803 F. App'x 441 (2d Cir. 2020), the Second Circuit observed that, although "[t]he district court properly gave preclusive effect to the N.Y. Education Law § 3020-a hearing officer's findings of fact related to [the plaintiff]'s classroom behavior and failure to report for duty for an entire school year," the plaintiff was "correct that the hearing officer's legal conclusion that [the plaintiff] should be terminated is not preclusive with respect to the legal merits of [the plaintiff]'s retaliation claim" because "the hearing did not address the sexual harassment incidents or [the plaintiff's] retaliation claim raised in the district court complaint."  *Id.* at 442-43.  The court, however, affirmed the district court's grant of summary judgment because the plaintiff "was estopped from challenging the findings [in the 3020-a hearing] that she failed to report for work for the entire 2012-13 school year and told a student she would 'smack him,'" and the plaintiff "did not offer sufficient evidence showing that [the defendant's reasons for bringing the 3020-a charges] were pretextual."  *Id.* at 443.

In *Smith v. New York City Department of Education*, 808 F. Supp. 2d 569 (S.D.N.Y. 2011), the court held that the plaintiff was collaterally estopped from litigating his federal discrimination claims.  There, the hearing officer had found the plaintiff "guilty of misconduct, time and attendance abuse, insubordination, and neglect of duty."  *Id.* at 580.  In doing so, the hearing officer considered whether the plaintiff  "was subjected to adverse employment actions because of his own conduct or because of other factors, such as impermissible discrimination by defendants."  *Id.* So unlike here, "the parties actually litigated and the hearing officers actually decided that any adverse employment action was justified and not based on impermissible discrimination."  *Id.*; *see also Davis v. New York City Dep't/Bd. of Educ.*, No. 14 Civ. 2281 (KAM) (LB), 2015 WL 5772204, at *7 (E.D.N.Y. Sept. 29, 2015) (finding that the plaintiff's retaliation claim was precluded by the prior section 3020-a proceeding when the plaintiff "specifically argued that the [section 3020-a] charges were brought against her solely in retaliation" and "[t]he hearing officer addressed [the plaintiff]'s retaliation claim in an extremely thorough, 100-page opinion").

Sept. 20, 2017) ("While the [Rehabilitation] Act serves to protect individuals with disabilities, it extends its remedies to any person aggrieved by the discrimination of a person on the basis of his or her disability.  The use of such broad language in the enforcement provisions of the statutes evinces a congressional intention to define standing to bring a private action under Section 504 as broadly as is permitted by Article III of the Constitution." (quotations and alterations omitted)). Claims for retaliation under the Rehabilitation Act are analyzed under the same *McDonnell Douglas* framework as retaliation claims under the Americans with Disabilities Act ("ADA") and Title VII.  *See Dodd*, 489 F. Supp. 3d at 246 ("Claims for retaliation under the Rehabilitation Act are analyzed under the familiar '*McDonnell Douglas*' burden-shifting framework established for analyzing Title VII, and other, retaliation claims."); *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (recognizing that elements of a retaliation claim under the Rehabilitation Act are same as the ADA); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (after a *prima facia* showing of discrimination is made, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the" adverse action). Thus, to establish a *prima facie* case of retaliation under the Rehabilitation Act, a plaintiff must show that (1) he engaged in protected activity, (2) the employer was aware of this activity, (3) the employer took adverse employment action against him, and (4) there is a causal connection between the alleged adverse action and the protected activity.  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  "A plaintiff's burden at this prima facie stage is *de minimis*."  *Id.*

### 1.  Statute of Limitations

Before turning to whether Plaintiff has sufficiently stated a claim for retaliation under the Rehabilitation Act, the Court first considers whether Plaintiff's allegations of Defendant's wrongdoing before July 5, 2016 are time barred.  "Rehabilitation Act claims in New York are

governed by New York's three-year statute of limitations governing personal injury actions." *Stropkay v. Garden City Union Free Sch. Dist.*, 593 F. App'x 37, 41 (2d Cir. 2014) (quotations omitted).  Defendant argues that because "Plaintiff commenced this action on July 5, 2019, the statute of limitations would only extend to July 5, 2016."  Motion at 14.  Plaintiff responds by arguing that his pre-July 5, 2016 allegations survive under the continuing violation doctrine because he "was still subject to a present and continuing retaliatory hostile work environment." Opposition at 15.

In general, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" and "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112, 114 (2002).  The Supreme Court has recognized an exception to this general rule for hostile work environment claims, which "are different in kind from discrete acts" in that "[t]heir very nature involves repeated conduct."  *Id.* at 115.  Thus, the "'unlawful employment practice' . . . cannot be said to occur on any particular day," but "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of [unlawful conduct] may not be actionable on its own."  *Id.*  In such circumstances, where "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability" based on a theory of a "continuing violation."  *Id.* at 117; *see also Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("To trigger the continuing violation doctrine when challenging discrimination, the plaintiff 'must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy.'" (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).  It is worth noting, however, that "the continuing violation

14

doctrine is disfavored in this circuit and will be applied only upon a showing of compelling circumstances." *Bloom v. New York City Bd. of Educ. Teachers' Ret. Sys. of the City of New York*, No. 00 Civ. 2728 (HBP), 2003 WL 1740528, at *8 (S.D.N.Y. Apr. 2, 2003) (quotations omitted); *accord Trinidad v. New York City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) ("As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." (quotations omitted)).

The Court finds that the continuing violation doctrine does not apply to Plaintiff's allegations of conduct before July 5, 2016. As an initial matter, the Fourth Amended Complaint does not advance a theory of liability based on a retaliatory hostile work environment. *See Collins v. City of New York*, 156 F. Supp. 3d 448, 458 n.6 (S.D.N.Y. 2016) ("Because [the plaintiff] did not allege a hostile work environment, but instead alleged specific acts of retaliation, the continuing violation exception does not apply."). Rather, Plaintiff argues for the first time in his Opposition that "the actions taken by [Defendant] in retaliation against [Plaintiff] have been continuing in nature, arising in retaliation for his protected activity through the 2015-2016 school years and continuing to 2016-2017 school years." Opposition at 16-17. "It is well-settled that a plaintiff 'cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'" *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (quoting *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting argument raised for the first time in opposition to a motion to dismiss the complaint). Therefore, the Court need not credit Plaintiff's conclusory argument that lacks factual support and is asserted for the first time in his Opposition.

But even if the Fourth Amended Complaint could be construed as advancing a theory of liability based on a retaliatory hostile work environment, the continuing violation doctrine still would not apply to Plaintiff's claim because Plaintiff fails to adequately allege facts that would support a hostile work environment.  To state a hostile work environment claim, a plaintiff "must first show that his workplace 'was permeated with discriminatory intimidation, ridicule, and insult,' that was 'sufficiently severe or pervasive to alter the conditions' of the victim's employment and create an abusive working environment."  *Martinez v. City of New York*, 338 F. App'x 71, 73 (2d Cir. 2009) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)).  The hostile work environment may result from "a single incident [that] was extraordinarily severe, or . . . a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment."  *Alfano v. Cotello*, 294 F.3d 365, 374 (2d. Cir. 2002) (quotations omitted).  The Court must consider "[t]he totality of the circumstances[,] . . . including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  "Isolated incidents or 'episodic' stray remarks are not 'sufficiently continuous and concerted in order to be deemed pervasive.'"  *De Figueroa v. New York*, 403 F. Supp. 3d 133, 160-61 (E.D.N.Y. 2019) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Here, the Fourth Amended Complaint only alleges discrete instances of retaliatory conduct by Defendant.  For example, Plaintiff alleges that:

- "[Assistant Principal] Rauner filed a false verbal abuse claim in October of 2017 against Plaintiff," Fourth Am. Compl. ¶ 30;

- "[T]he Principal was overheard saying he wanted to get rid of [Plaintiff]," *id.* ¶ 31;

16

- "Plaintiff suddenly began to receive negative observations [in the 2015-2016 school year], ultimately leading to his termination," *id.* ¶ 33;

- "Plaintiff was subjected to disparate treatment by not allowing choices as to type and number of observations, not having the minimum number of observations, altering an observation, not properly implementing the Teacher Improvement Plan, not allowing Union representation at crucial meetings, and placing false information into [Plaintiff]'s file," *id.* ¶ 34; and

- Plaintiff "was the only core subject teacher who did not have a dedicated classroom and traveled from class to class using a cart," *id.* ¶ 36.

These allegations represent distinct instances of Defendant's wrongdoing that are not sufficiently "continuous and concerted" nor "severe or pervasive" to establish a hostile work environment. *See, e.g.*, *Collins*, 156 F. Supp. 3d at 458 (concluding that the plaintiff's claims that "she was constructively discharged and threatened with negative employment evaluations prior to [the limitations period] are discrete actions and are barred by the statute of limitations"); *Volpe v. New York City Dep't of Educ.*, 195 F. Supp. 3d 582, 596 (S.D.N.Y. 2016) (holding that allegations of "file theft, an assignment to perform breakfast duty, a public accusation of being against the school, and anonymous rumors that [the principal] was watching [the plaintiff] closely and wanted to make her work intolerable," as well as "a § 3020-a charge and investigation," failed to state a claim under a theory of retaliatory hostile work environment); *Brown v. New York City Dep't of Educ.*, No. 20 Civ. 2424 (VEC) (OTW), 2021 WL 4943490, at *12 (S.D.N.Y. Aug. 31, 2021) ("[C]ourts in this Circuit have consistently held that allegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim." (quotations and alteration omitted)), *report and recommendation adopted*, 2021 WL 4296379 (S.D.N.Y. Sept. 20, 2021); *Perez v. N.Y. State Off. of Temp. & Disability Assistance*, No. 14 Civ. 1621 (SAS), 2015 WL 3999311, at *7 (S.D.N.Y. June 30, 2015) ("Allegations of negative job evaluations or excessive reprimands are insufficient to establish a hostile environment claim." (quotations omitted)).

Accordingly, Plaintiff's allegations of Defendant's wrongdoing that occurred before July 5, 2016 are outside the statute of limitations and the Court will not consider those allegations in assessing Plaintiff's claim, except as relevant background evidence.  *See Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("[E]xpiration of the limitations period does not bar an employee from using the prior acts as background evidence in support of a timely claim." (quotations omitted)).

### 2.   **Defendant's Awareness of Plaintiff's Protected Activity**

A protected activity is an "action taken to protest or oppose statutorily prohibited discrimination."  *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (quotations omitted).   "[A]dvocacy on behalf of special education students constitutes protected activity under . . . the Rehabilitation Act."  *Lopez v. New York City Dep't of Educ.*, No. 17 Civ. 9205 (RA), 2020 WL 4340947, at *11 (S.D.N.Y. July 28, 2020); *accord Manigaulte v. C.W. Post of Long Is. Univ.*, 659 F. Supp. 2d 367, 375 (E.D.N.Y. 2009) ("[A] non-disabled individual who files a complaint of disability discrimination is engaging in activity protected under the ADA.").  Moreover, "[a] plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law."  *Treglia*, 313 F.3d at 719 (quotations omitted); *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011) ("An employee engages in a protected activity when she complains of an employment practice that she reasonably believes violates the law.").

Plaintiff alleges that during the relevant time period, he "was responsible for teaching students on his roster who had IEPs that called for 'Integrated Co-Teaching Services,'" which require "a special education teacher (co-teacher)."  Fourth Am. Compl. ¶¶ 13-14.  This policy also

allegedly limits the number of students with IEPs in an ICT classroom to at most forty percent of the class roster. *Id.* ¶ 16.  Plaintiff alleges that he "raised the issue regarding not having a special education teacher in an ICT class . . . throughout the 2016-2017 school year" and that "his classes contained over forty percent[] special education students." *Id.* ¶ 19.  In particular, on December 9, 2016, Plaintiff contends that he raised these issues with a representative of the United Federation of Teachers who, upon information and belief, "brought Plaintiff's concern to the Principal." *Id.* ¶¶ 23-24.  On December 23, 2016, Plaintiff alleges he filed an APPR complaint, which "goes directly to the Principal." *Id.* ¶ 25.   And on November 22, 2017, Plaintiff claims to have "told [Department of Education] Counsel Jennifer Hogan that many of the classes exceeded forty percent IEP students and had no co-teachers." *Id.* ¶ 26.[6]  Such advocacy constitutes protected activity under the Rehabilitation Act.  According to Plaintiff, "[a]s a direct result of [his] advocacy for special education[] students and his complaint regarding the lack of services, support and resources, and other advocacy set forth above for special education students, Plaintiff was retaliated against by commencing a 3020a proceeding on or about May 26, 2017, and being terminated on January 29, 2018." *Id.* ¶ 51.

Defendant argues that these allegations cannot establish that Defendant was aware of any protected activity because "it is unclear that Plaintiff's decision to merely 'raise the issue' of potentially requiring ICT or ratio of IEP within his classes" was "reasonably understood as a complaint of discrimination."  Motion at 11 (quotations omitted).  Defendant also argues that "it is not clear whether [Plaintiff's] statements were framed as merely a staffing concern or a concern regarding the provision of benefits to disabled students." *Id.* ¶ 11.  But questions about what school

---

[6] The Fourth Amended Complaint further alleges that "[i]n August 2015, Plaintiff also submitted material on Special Education school policy complaining that [Defendant] violated the ADA and Rehabilitation Act rights of the students."  Fourth Am. Compl. ¶ 18.

officials reasonably understood are factual issues that are not appropriate to resolve at the motion to dismiss stage.   On a motion to dismiss,  the court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. New York Univ.*, 9 F.4th 95, 106-07 (2d Cir. 2021).  Thus, while discovery may reveal that Defendant did not know that Plaintiff was engaging in protected activity (*i.e.*, advocacy on behalf of special education students) and that Defendant could not have reasonably perceived Plaintiff's complaints as protected activity, construing the allegations in the light most favorable to Plaintiff and drawing all inferences in his favor, the Court finds that Plaintiff has sufficiently alleged his participation in a protected activity and Defendant's awareness of such activity.

### 3.   Causal Connection Between the Protected Activity and the Adverse Action

"To establish a connection between a protected activity and an adverse action, a plaintiff must allege that the former was a substantial motivating [factor] for the latter."  *Volpe*, 195 F. Supp. 3d at 597 (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)).  Such a causal connection "can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky*, 921 F.3d at 353 (quotations omitted); *see also Dodd*, 489 F. Supp. 3d at 247 ("Indirect evidence may consist of temporal proximity or other circumstantial evidence."); *Genn v. New Haven Bd. of Educ.*, 219 F. Supp. 3d 296, 323 (D. Conn. 2016) ("Direct evidence of retaliatory animus directed towards a plaintiff is sufficient to show a causal connection.").  While claims premised on temporal proximity between the protected activity and the retaliatory conduct

generally must allege temporal proximity that is "very close" in time, *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)), the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos*, 252 F.3d at 554.

Defendant argues that Plaintiff fails to allege a plausible causal connection because too much time elapsed between any protected activity and the alleged retaliatory conduct and because Plaintiff fails to allege any other facts to support an inference of retaliatory intent. Motion at 13-15.[7] The Court disagrees. Plaintiff alleges that during the 2016-2017 school year, he "raised the issue regarding not having a special education teacher in an ICT class," Fourth Am. Compl. ¶ 19, and complained to "School Counselor Lorin Schneider about ICT and the lack of co-teachers in classrooms," *id.* ¶ 20. Moreover, on December 9, 2016, Plaintiff allegedly emailed his union representative "about not having a co-teacher" and "about his class in which over half the students on his roster were special education students slated for ICT, yet Plaintiff was teaching the students alone," and further alleges that, upon information and belief, the union representative "brought Plaintiff's concern to the Principal." *Id.* ¶¶ 23-24. On December 23, 2016, Plaintiff filed an APPR

---

[7] Because the Court has found that Plaintiff's allegations from before July 5, 2016 are time barred, *see supra* Section III.A., the Court does not consider Defendant's causation arguments outside the limitations period, except as relevant background evidence. The Court also does not consider Defendant's argument based on Plaintiff's allegation in the Third Amended Complaint, *see* Motion at 13, as that complaint has been superseded by the Fourth Amended Complaint, which was filed by counsel and is the operative complaint in this action. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d. Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotations omitted)); *Lopez v. Cajmant LLC*, No. 15 Civ. 593 (ENV) (RER), 2020 WL 9814059, at *5 n.7 (E.D.N.Y. Oct. 26, 2020) (observing that the plaintiff's allegations in the two preceding complaints "cannot be considered because the operative complaint is the Second Amended Complaint, which supersedes the previous Complaints and renders them of no legal effect").

complaint, which "goes directly to the Principal." *Id.* ¶ 25.  Finally, according to Plaintiff, on November 22, 2017, he "told [Department of Education] Counsel Jennifer Hogan that many of the classes exceeded forty percent IEP students and had no co-teachers." *Id.* ¶ 26.  Plaintiff alleges that Defendant retaliated by commencing a section 3020-a proceeding against Plaintiff on or about May 26, 2017, *id.* ¶ 51, and that Assistant Principal Rauner "filed a false verbal abuse claim" against him in October 2017, *id.* ¶ 30.  Furthermore, Defendant terminated Plaintiff on January 29, 2018.  *Id.* ¶ 51.

While approximately five months passed between Plaintiff's filing of the APPR complaint and Defendant's commencement of the section 3020-a proceeding, Plaintiff also alleges other examples of retaliatory conduct throughout that five-month period, including that Plaintiff was not provided an initial planning conference, was not given a choice of observation options, and was not provided his own classroom, and that false information was placed in Plaintiff's personnel file without his knowledge.[8]  *Id.* ¶¶ 34, 36, 45; *see also id.* ¶ 31 (alleging that "the Principal was overheard saying he wanted to get rid of [Plaintiff]" at some unspecified time).  Drawing all reasonable inferences in Plaintiff's favor, the Court finds that this sufficiently alleges a causal connection.  *See, e.g.*, *Espinal v. Goord*, 558 F.3d 119, 129-30 (2d Cir. 2009) (permitting an inference of causation despite the passage of six months between the protected activity and the alleged adverse action because there was other evidence in the record to support the causal connection); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980) (finding causation

---

[8] Since Defendant's Motion does not make any arguments as to whether the instances of alleged retaliation are materially adverse, the Court assumes for the purposes of the Motion, but does not make any findings, that the alleged instances of retaliation are, in fact, materially adverse. *See Kelly v. N.Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 403 (E.D.N.Y. 2016) ("A plaintiff must show 'material adversity,' because 'it is important to separate significant from trivial harms.'").

based on an eight-month lag between the protected activity and the adverse action); *Collins*, 156 F. Supp. 3d at 459 (concluding that the plaintiff alleged a sufficient causal nexus between the protected activity and the adverse action to survive a motion to dismiss where there were approximately six months between the plaintiff's protective activity and the defendant's retaliatory conduct and the plaintiff also alleged retaliatory animus by school administrators); *Dupee v. Klaff's, Inc.*, 462 F. Supp. 2d 233, 241 (D. Conn. 2006) (finding sufficient causal connection despite thirteen-month lapse between the protected activity and the adverse action because the plaintiff had testified as "to other adverse conduct taken against him, including ridicule and harassment").

### IV.     Conclusion

For the foregoing reasons, Defendant's motion to dismiss the Fourth Amended Complaint is denied.  The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 74.

SO ORDERED.

Dated: April 8, 2022
      New York, New York                                         _____
                                          JOHN P. CRONAN
                              United States District Judge